# MARSHALL MILLING COMPANY v. HINTZ-CAMERON COMPANY.[1]

July 13, 1923.

No. 23,454.

**Buyer bound by his written contract in absence of fraud or mistake.**

1. Where parties execute a written contract for the sale of goods from one to the other on the terms and conditions therein specified, they are bound thereby in the absence of fraud or mistake; and, where neither fraud nor mistake is alleged, a party to such a contract cannot relieve himself from liability thereon by showing that he executed it without examining it sufficiently to discover that its terms differed from the terms of a prior oral agreement.

**Evidence inadmissible.**

2. Offers of testimony tending to prove a prior oral agreement in respect to matters covered by the written contract were correctly excluded.

**When parol testimony concerning written contract is admissible.**

3. Where a written contract is made in part performance of an oral agreement, it is only the matters not covered by the written contract that may be proved by parol testimony.

**Court had discretion to deny motion to amend answer.**

4. Denying a motion to amend the answer made during the trial was within the discretion of the trial court.

**Fraud not proved.**

5. Where plaintiff's agent, in soliciting a further order, promised to go with defendant and sell the goods then on hand, the mere fact that he made no sales is not sufficient to show that the promise was made with a fraudulent intent.

**Buyer bound by term limiting time for claiming damages.**

6. The contract gave the buyer 30 days after receiving the goods in which to discover and report defects in quality and provided that he

[1]Reported in 194 N. W. 772.

should be estopped from claiming defects unless reported within such 30 days. Having given no notice of defects within that time, he cannot thereafter maintain a claim for damages therefor.

Action in the district court for Lyon county to recover $5,951.35 for breach of 3 contracts for the sale of flour. In its answer defendant interposed a counterclaim for $5,695. The case was tried before Magney, J., who at the close of the testimony granted plaintiff's motion for a directed verdict. From an order denying its motion for a new trial, defendant appealed. Affirmed.

*G. A. E. Finlayson,* for appellant.

*James H. Hall, J. V. Williams* and *H. L. Hoidale,* for respondent.

TAYLOR, C.

Plaintiff, a manufacturer of flour at Marshall, Minnesota, brought this action against defendant, a jobber of flour at Duluth, Minnesota, to recover damages for the breach of 3 contracts for the purchase of flour, copies of which, marked respectively Exhibits A, B and C, were attached to and made a part of the complaint. The court directed a verdict for plaintiff and defendant appeals from an order denying a new trial.

In making the contracts in question printed blanks were used and the contracts are identical in form and terms except as to date, quantity of flour purchased and price. The quantity purchased under Exhibit A was 1,000 barrels, under Exhibit B 500 barrels, and under Exhibit C 350 barrels. It is admitted that defendant took 960 barrels of the flour covered by contract A, but did not take the remaining 40 barrels covered by that contract, nor any part of the flour covered by contracts B and C.

The form of contract used is lengthy, covering 14 printed pages of the record, and was evidently drawn with the intention of protecting the seller in every possible contingency which might arise. The opening paragraph is as follows:

"Marshall Milling Company of Marshall, Minn., hereby agrees to sell to Hintz-Cameron Co. of Duluth, Minn., who agrees to buy from seller, at said Marshall, at the price, or prices, in the quantity, or

quantities, stated below, and on the terms and conditions and subject to the agreements appearing below and on the back hereof, the following described goods."

The contracts provide for liquidated damages in case of breach thereof and specify in detail the method of computing such damages in case of a breach by defendant. That the amount claimed is the amount to which plaintiff was entitled by the terms of the contracts is not questioned.

The real question in dispute is whether plaintiff is bound and concluded by the contracts. The execution of these contracts is admitted both in the pleadings and the evidence. In its answer defendant set forth an oral agreement alleged to have been made long before the execution of any of the contracts in controversy, and alleged, in substance, that these written contracts were made in part performance of such oral agreement. At the trial the court excluded all the evidence offered to prove the provisions of the oral agreement on the ground that it tended to vary a written contract. Defendant frankly concedes that all the provisions which it sought to prove were fully covered by the written contracts. This being true, defendant was not in position to invoke the rule that, where a written instrument is executed in part performance of an oral agreement, the provisions of the oral agreement, not covered by the writing, may be proved by parol, and makes no claim that the proffered proof was admissible under that rule.

The answer contained a general denial of all the allegations of the complaint except as therein admitted. Defendant contends that under this general denial it was entitled to show that the minds of the parties never met notwithstanding the fact that the execution of the contracts was admitted. In support of this contention, defendant offered to prove that it had purchased flour from plaintiff at frequent intervals during a period of some two years prior to the purchases in question under contracts similar in appearance to those in dispute; that defendant, believing that the contracts in dispute were of the same legal effect as those previously made, executed them without examining them or knowing of the various provisions printed in small type on the back thereof, and that, in fact, they

differed materially from the contracts previously made. Contracts A and B were presented to defendant at its office in Duluth by plaintiff's soliciting agent, were there executed by defendant and then sent to plaintiff for execution, as its soliciting agent had no authority to make contracts. Contract C was executed by plaintiff and then sent to defendant by mail who retained it some days before executing it. Each of the contracts was executed in duplicate —one copy being retained by defendant and the other by plaintiff. Defendant concedes that no representations were made concerning the terms and provisions of the contracts, but urges that printing them so that they were similar in appearance to those previously used and presenting them without calling attention to the fact that the terms had been materially changed, was equivalent to procuring the execution of them by trick and artifice, and that, having executed them without discovering the change in terms, defendant ought not to be bound by them.

The facts above recited would hardly justify a charge that fraudulent misconduct on the part of plaintiff induced defendant to execute the contracts without knowing their terms. But, however this may be, the answer contains no such charge. Having voluntarily executed the contracts, defendant is bound by the terms and provisions contained therein in the absence of fraud or mistake; and neither fraud nor mistake are alleged, except concerning a promise in connection with Contract C which will be referred to later. At the close of plaintiff's evidence, defendant made a motion to amend its answer by charging plaintiff with fraud in procuring the execution of the contracts in the manner above stated. The court denied this motion and was clearly within its discretion in doing so.

Defendant made numerous offers to prove provisions of the alleged oral agreement, all of which were excluded. These rulings were correct, for the matters sought to be proven were covered by the written contracts, and there were no allegations of fraud or mistake under which such proof would be admissible.

Contract C was made as the result of conversations over the long distance telephone. Defendant claims that when asked to make this purchase it had a large quantity of plaintiff's flour on hand and at

first declined to buy more for that reason; that thereupon plaintiff's agent stated "that he would come to Duluth and would go out with Dan Cameron (one of defendant's officers) and would sell all the flour of plaintiff's brand then on hand;" and that, relying on such representations and induced thereby, defendant made the purchase and executed Contract C therefor. Defendant alleged that these representations were false and were fraudulently made for the purpose of deceiving defendant and inducing it to make the contract.

Defendant recognizes the rule that ordinarily fraud cannot be predicated upon a promise to do something in the future, 1 Dunnell, Minn. Dig. § 3827, and cases there cited, but relies upon the exception to that rule, namely, that a promise made with intent to deceive and with no intention to perform it may constitute fraud. Cases falling within this exception to the rule are cited in section 3827 of the digest, and in the same section in the 1916 and 1921 supplements thereto. Defendant's proof did not go far enough to establish fraud within the meaning of this exception. Defendant proved that in a telephone conversation plaintiff's agent made the statement previously quoted, and then contented itself with offering to prove that he "did not at any time sell any of the flour on hand at the time of the telephone conversation." It appears that this agent had previously gone out with Cameron selling flour, and there is nothing from which it can be inferred that when he made this promise he did not intend to keep it. So far as the record discloses, he may have been ready and willing to go out with Cameron for the purpose of making sales. There is no showing that he refused to do so. Proving the mere fact that he made no sales, without proving anything more, is not sufficient to show that the promise was made with a fraudulent intent.

Defendant alleged that the flour was purchased with a warranty as to quality; that much of the flour delivered under Contract A was defective in quality; and interposed a counterclaim for damages. The testimony offered to prove an oral warranty made before the making of the written contract and to prove the defective quality of the flour was excluded and defendant assigns the rulings excluding such testimony as error.

The written contract states that it "is a contract to sell, by description, goods to be manufactured;" that it "contains the whole agreement;" and that "there are no representations, guaranties or warranties except such as may be written on the face hereof, if any, nor any agreements collateral hereto." The contract provides, among other things, that retaining any part of a shipment for more than 30 days after receiving it "without reporting defect, breach or default" to the seller before the expiration of such 30 days, shall constitute an acceptance of such shipment; and that acceptance of goods shall estop the buyer from claiming breach of warranty, defect in quality or other breach or default as to such goods. All of the flour delivered under this contract was shipped between May 25 and September 3, 1920; and all of it except 60 barrels was shipped on or before July 24. Defendant took and retained all the flour shipped and paid for it.

The first, if not the only complaint as to quality, was made in a letter written December 6, 1920, in which defendant, after requesting plaintiff to correct an error in the statement rendered as to the number of barrels shipped, stated:

"A great many of our customers complain that the flour is too soft to use for bread and that it is only good for pies and so forth is it contains too much winter wheat flour. We have a large quantity of it on hand in 140-lb. jutes which we are unable to move for this reason."

Whether defendant intended this as a claim that the flour was not of the quality contracted for is not clear, for it made no statement to that effect. However this may be, it was then too late to make such a claim. The contract gave defendant 30 days after receiving a shipment in which to discover and report defects in quality, and provided that defendant should be estopped from claiming any such defect unless reported within that time. It was competent for the parties to make such an agreement and they are bound by it. Defendant received 900 barrels of the flour some five months before writing that letter and the remaining 60 barrels about 3 months before writing it, and accepted and paid for the flour, and during

all that period proceeded to dispose of it without making any claim that it was not of the quality contracted for. The contract gave defendant a reasonable time in which to discover and report defects, and, having failed to report any within the prescribed time, defendant cannot hold plaintiff liable for those now alleged. Uniform Sales Act, §§ 49 and 71 [Laws 1917, pp. 782, 790].

The evidence shows that, between the time when the contracts were made and the time when they were terminated on account of defendant's refusal to accept further deliveries, the price of wheat declined an average of more than one dollar per bushel, and perhaps this unusual drop in price may have inclined the parties to look at the contracts from antagonistic standpoints.

We find no errors and the order denying a new trial is affirmed.