## MANCOURT-WINTERS COAL CO. *v.* FORD MOTOR CO.

1. SALES — BREACH OF CONTRACT — FAILURE TO SHIP REQUIRED MONTHLY SHIPMENTS NOT A BREACH OF CONTRACT.

Failure for two months to ship the required amount of coal under a contract calling for equal monthly shipments during the year could not be relied on by the buyer as cause for cancellation, where the contract provided that the shipments for each month should constitute fulfillment for that month, although it also provided that it was subject to cancellation in case of breach of any of its terms or conditions.[1]

2. SAME—SHIPMENT OF INFERIOR GRADE BY MISTAKE NOT A BREACH OF CONTRACT.

Where the buyer knew that the coal was to be furnished by parties other than the seller, and that the latter would have no opportunity to inspect before delivery, the shipment, by mistake, of four cars of inferior coal, which were discovered and rejected by the buyer, was not such a material breach of the contract as justified its cancellation by the buyer, especially where the seller did not insist on the inferior coal being accepted and did not refuse to furnish the quality contracted for.[2]

Error to Wayne; Webster (Arthur), J.    Submitted June 9, 1926.    (Docket No. 29.)    Decided October 4, 1926.    Rehearing denied January 3, 1927.

Assumpsit by the Mancourt-Winters Coal Company against the Ford Motor Company for breach of a contract for the purchase of coal.    Judgment for plaintiff.    Defendant brings error.    Affirmed.

*Clifford B. Longley* and *Rudolph E. Hofelich,* for appellant.

*James O. Murfin,* for appellee.

[1]Sales, 35 Cyc. p. 136; [2]Id., 35 Cyc. p. 138 (Anno); 38 L. R. A. (N. S.) 541; 14 A. L. R. 1209; 24 R. C. L. 282; 4 R. C. L. Supp. 1534.

Sharpe, J.   On July 2, 1920, the plaintiff and defendant entered into a written contract, wherein the plaintiff agreed to sell and the defendant agreed to purchase 25,000 tons of "Elkhorn" coal at the price of $7.50 per ton "f. o. b. mines," to be shipped to defendant at its River Rouge plant in equal monthly shipments during the following year.   The coal was to be furnished from "Coal Run, Funk, Elkhorn Collieries Company and Buckingham and based on a 75 per cent. car supply."   The contract stated that the plaintiff was purchasing the coal from the representatives of certain mines, and a part of its contract for such purchase was inserted in that entered into with defendant and made a part thereof.   It contained the following provisions:

"'Shipments on this contract made during any one month shall constitute fulfillment of this contract for that month and the tonnage herein contracted shall be cumulative only for such one month period except by mutual agreement. * * *

"'The purpose of this contract is to assure to the seller a market for that portion of his monthly tonnage represented by the amount or amounts entered herein and to assure the buyer that portion of his supply of coal mentioned herein, both at the price or prices set forth.   Any variation or variations from the terms of this contract therefore, other than those provided for herein, is or are to be considered as *prima facie* evidence of damage to the party injured by such variation or variations.'

"This contract is subject to cancellation in case of breach of any of its terms or conditions."

The contract was canceled by defendant on November 17, 1921.   Plaintiff thereafter, claiming that such cancellation was unwarranted, brought suit to recover the damages it sustained thereby.   Defendant's motion for a directed verdict was taken under advisement and the case submitted to the jury, who found for plaintiff in the sum of $115,167.40.   This motion was renewed after verdict and denied, as was also its

motion for a new trial. Defendant here reviews the judgment entered on the verdict by writ of error.

1. Was the cancellation effective? The coal contracted for is a high grade, high volatile, by-product coking coal, with an ash content not exceeding 8 per cent. The plaintiff well understood that it was not intended to be used for making steam. On November 16th, defendant received four cars of Regal Block coal to apply on the contract. This coal was not produced in any of the mines named in the contract, nor was it of a quality which defendant could use in its by-product plant. It ran from 18 to 21 per cent. ash. On discovering its quality, defendant's fuel superintendent, Mr. Sweat, called plaintiff's vice-president, Mr. Winters, on the telephone, complaining about it, and the next day wrote him a letter, which, after referring to their conversation and stating that the coal shipped them came from the Regal Block Coal Company, said:

"You of course appreciate the liability of any one shipping this grade of coal into a by-product plant as a by-product coal.

"We also wish to call your attention to the fact that during the month of August there were but six cars applied against the above mentioned contract, September there were no cars shipped and in October there were twenty cars shipped.

"In view of the very poor showing made on this contract which was climaxed by the four cars above reported to us yesterday we feel that this contract is no longer in effect and are notifying you now that as far as we are concerned this contract is canceled."

Plaintiff's failure to ship the required amount during September and October cannot be relied on for cancellation, as the contract provided, as before stated, that shipments made each month should constitute fulfillment for that month. Besides, the record is silent as to any complaint made of plaintiff's failure to perform according to the terms of the contract up to that

time.    Stripped of extraneous matter, the question is, Did the shipment of the four cars of Regal Block coal constitute a breach of the contract and justify its cancellation by defendant?

The uniform sales act (3 Comp. Laws 1915, § 11876, subd. 2) provides:

"Where there is a contract to sell goods to be delivered by stated installments which are to be separately paid for, and the seller makes defective deliveries in respect to one or more installments, or the buyer neglects or refuses to take delivery of or pay for one or more installments, it depends in each case on the terms of the contract and the circumstances of the case, whether the breach of contract is so material as to justify the injured party in refusing to proceed further and suing for damages for breach of the entire contract, or whether the breach is severable, giving rise to a claim for compensation, but not to a right to treat the whole contract as broken."

The trial court, in denying defendant's motion for judgment, said:

"I cannot convince myself that the parties signing a contract of this character intended by the language quoted above that every trivial deviation from the terms of the contract would place it in the power of the other party to cancel instantly.    It seems to me the instrument must be read as a whole, interpreted from the four corners, and when so interpreted that it does not mean that the purchasers can cancel, for example, because a few lumps of coal of inferior quality are found in some one car shipped, or because by mistake of a clerk a single car of poor quality was routed to the purchaser.    Yet the argument of defendant's counsel leads them logically to this very point."

Defendant's counsel urge that, as there may be cancellation for a material breach without any provision in the contract therefor, and cancellation for a specific breach if specified in the contract (*Cadillac Machine Co.* v. *Iron Co.*, 205 Mich. 107; *Dow Chemical Co.* v.

*Chemical Works,* 208 Mich. 157 [14 A. L. R. 1200]), the provision that "This contract is subject to cancellation in case of breach of any of its terms or conditions" renders it subject to cancellation in case of any breach, whether material or not.

The plaintiff was under obligation to furnish "Elkhorn" coal. Its representatives sent to defendant Regal Block coal in the fulfillment of such obligation. The defendant was not deceived by the appearance of such coal. That it was not a by-product coal was plainly observable. It refused to accept it. The delivery made was not of coal called for by the contract, but defective in condition. The contract clearly shows that defendant knew that the coal to be shipped to it was to be furnished by parties other than the plaintiff and that plaintiff would have no opportunity to inspect it before delivery.

A consideration of the entire contract satisfies us, as it did the trial court, that there was no such failure to perform its obligation on the part of plaintiff as constituted a breach entitling the defendant to cancel and be relieved of further obligation thereunder.

Had plaintiff insisted that defendant accept the Regal Block coal, or had it refused to furnish Elkhorn coal to take the place of that shipped, a different question would be presented. To hold that a purchaser may cancel under the facts here presented would lead to much confusion in business affairs. Suppose a dealer in lumber should contract to supply a purchaser with 25 car loads of pine lumber and that in the performance of the contract his employees should by mistake ship to the purchaser one or more cars of hemlock lumber, would not the duty of the purchaser be clear? He should notify the seller of the mistake made and permit him to furnish the pine lumber to take the place of the hemlock. Similar instances might be multiplied.

We find no error in the instruction of the court on the question of defendant's right to cancel.   The conclusion reached finds support in the following authorities:   *Davis* v. *Downs,* 4 Mich. 530; *McFadden* v. *Wetherbee,* 63 Mich. 390, 395; *West* v. *Bechtel,* 125 Mich. 144 (51 L. R. A. 791) ; *Welsh* v. *Michigan Maple Co.,* 161 Mich. 16; and cases and notes in 30 L. R. A. 61; 43 L. R. A. 382; and 38 L. R. A. (N. S.) 539.

2. The other assignments are not discussed by counsel.   They do not disclose any reversible error.

The judgment is affirmed, with costs to appellee.

SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.   BIRD, C. J., did not sit.