H. H. KING FLOUR MILLS CO. *v.* BAY CITY BAKING CO.

1. SALES—CONTRACTS—BREACH—SEVERABILITY.
   Where a contract for the sale of flour to be shipped in installments provided that it should be severable and that the seller's breach as to any installment should not give the buyer the right to refuse any other installment, the fact that one installment failed to make good bread did not excuse the buyer from further compliance.

2. APPEAL AND ERROR—ASSIGNMENT OF WRONG REASON FOR RIGHT VERDICT IMMATERIAL.
   If the trial court was right in directing a verdict, the fact that he assigned a wrong reason for it is not material.

3. CORPORATIONS—FOREIGN CORPORATIONS—LICENSES—PLEADING.
   The defense that plaintiff, a foreign corporation, could not maintain an action on a contract because it had failed to comply with the statute authorizing it to do business in Michigan, is not available where not pleaded in bar.

[1]Sales, 35 Cyc. p. 257; [2]Appeal and Error, 4 C. J. § 2557; [3]Corporations, 14a C. J. §§ 4069, 4070.

4. SALES—CONTRACTS—LONG CONTRACT NOT AVOIDABLE BECAUSE
   NOT UNDERSTOOD, IN ABSENCE OF FRAUD.

   The buyer may not avoid liability under a contract for
   the purchase of flour on the ground that it was a long
   one, printed on both sides of the paper in small type, was
   complex, difficult of understanding and unreasonable,
   where, although long and printed in small type, it was
   readable and not difficult of understanding, and there was
   no evidence of fraud.

5. SAME—PARTY MAY NOT AVOID UNDERSTANDABLE CONTRACT BE-
   CAUSE HE DID NOT UNDERSTAND IT WHERE HE FAILED TO HAVE
   IT EXPLAINED.

   If a written contract for the sale of flour, which was long
   but easily understandable, was not understood by the
   buyer, it was his duty to have it explained before sign-
   ing, and where he failed to do so he could not later avoid
   liability thereunder on the claim that he did not under-
   stand it.

6. DAMAGES—LIQUIDATED DAMAGES—PENALTY.

   Where damages for the breach of a contract for the sale
   of flour would be difficult to determine, it was proper for
   the parties to stipulate them, and, where based as nearly
   as possible upon compensation, will be construed as
   liquidated damages rather than as penalty and therefore
   recoverable.

Error to Bay; Houghton (Samuel G.), J.     Sub-
mitted June 23, 1927.     (Docket No. 17.)     Decided
July 29, 1927.

Assumpsit by the H. H. King Flour Mills Company
against the Bay City Baking Company on a contract
for the sale of flour.     Judgment for defendant on a
directed verdict.     Plaintiff brings error.     Reversed.

*Gilbert W. Hand* (*H. L. Hoidale,* of counsel), for
appellant.

*Collins & Thompson,* for appellee.

SNOW, J.     Plaintiff, a Minnesota corporation, man-

---

[4]Sales, 35 Cyc. p. 63; [5]Id., 35 Cyc. p. 131; [6]Damages, 17 C. J.
§ 253.

ufacturer of flour at Faribault in that State, sold defendant, engaged in the baking and selling of bread and kindred products in Bay City, Michigan, 2,000 barrels of its Fairybow brand of flour, of which the defendant received and paid for 250 barrels and refused the balance.   The contract of sale was in writing and will be hereinafter referred to in such particulars as may be necessary for the disposition of the case.

At the close of the proofs both parties requested verdict and formally in open court waived the right to submit any question to the jury.   The court thereupon directed verdict in favor of the defendant, based on its theory and claim that the 250 barrels of flour it had accepted and used did not make good bread.   The judge said:

"Now it appears that the 9,000 bushels of wheat was bought for this contract to make this flour from under the contract, and plaintiff could send out the orders promptly, in three months, in the months named in the contract, that this wheat was all for that purpose, and this flour was made out of that wheat, and it would not make good flour, and there isn't anything to indicate that the balance of it would make good flour, if that is the situation, and if the flour was not good flour, and this wheat would not make good flour, and it appears it would not, then the defendant would not be liable, and I shall direct a verdict of no cause of action."

In this we think he was in error.   By the terms of the contract shipments were to be made during October, November, and December, 1925, on directions of the buyer.   Each order and shipment constituted a separate transaction.   The contract provided that

"in event there is more than one installment of goods shipped or stipulated herein to be shipped, contract shall be severable as to each installment shipped or stipulated herein to be shipped, except as to seller's

right under clause (1) in par. 8; and extension of time as to one or more installments shall not affect any other; nor shall seller's breach or default as to any installment give buyer the right to refuse any other installment."

There can be no doubt the contract was severable in this respect. *Yerxa, Andrews & Thurston, Inc.,* v. *Randazzo Macaroni Manfg. Co.* (Mo.), 288 S. W. 20, 37; *Habicht* v. *Gallagher,* 172 Mich. 328; *Baer Grocer Co.* v. *Barber Milling Co.,* 223 Fed. 969; *Sheffield-King Milling Co.* v. *Sorg,* 180 Ky. 539 (203 S. W. 300). See, also, *Mancourt-Winters Coal Co.* v. *Ford Motor Co.,* 236 Mich. 323. The provision of the contract quoted is controlling, and even though the 250 barrels of flour used by defendant did not make good bread, it would be no indication of the quality of the balance. There was nothing in this transaction that would excuse defendant from further compliance with its contract.

But if the result reached by the court was correct, the fact he assigned a wrong reason for it is not material. Defendant's counsel claim right to verdict for the following reasons:

1. That plaintiff was a foreign corporation and had failed to comply with the statute authorizing it to do business in Michigan. This question needs no consideration as it was not properly raised. It should have been pleaded in bar. *Selznick Enterprises* v. *Garson Productions,* 202 Mich. 111; *Power Specialty Co.* v. *Michigan Power Co.,* 190 Mich. 717.

2. That the contract was signed through fraud and mistake; that it was without mutuality; and that defendant did not know or understand its terms. As we understand defendant in this, it is claimed that the contract was a long one, printed on both sides of a single sheet in extremely small type; that it was complex, difficult of understanding, and unreasonable; that it was not explained to him; and that because

thereof defendant is not bound by its terms.   The record shows that as soon as the order for the flour was accepted by plaintiff at its main office in Minnesota, a copy of the contract was sent to defendant.   It is true that portions of it were in small type, but it was readable, and not difficult of understanding.   It would not be profitable to recite it at length.   A similar contention was made in *Yerxa, Andrews & Thurston, Inc.,* v. *Randazzo Macaroni Manfg. Co.,* supra, involving a form of contract precisely like the one here, and it was there said:

"Finally, it is urged by appellant that the contract is so complex in its terms and conditions, and is printed in such small type, closely spaced, that it cannot be understood by the ordinary mind, and was not understood by defendant.   But, even so, such facts do not relieve a party from a contract which he has seen fit to make, for he was not obliged to enter into such contract. Written contracts are not to be held void merely because of detail or complexity of their content, or because of the type, or form of composition in which they are printed.   As aptly said by Sanborn, J., in *Chicago, etc., R. Co.* v. *Belliwith,* 28 C. C. A. 361, 83 Fed. 439:

" 'A written contract is the highest evidence of the terms of an agreement between the parties to it, and it is the duty of every contracting party to learn and know its contents before he signs and delivers it.   He owes this duty to the other party to the contract, because the latter may, and probably will, pay his money and shape his action in reliance upon the agreement.' "

See, also, *Marshall Milling Co.* v. *Hintz-Cameron Co.,* 156 Minn. 301 (194 N. W. 772) ; and *J. B. Colt Co.* v. *Kimball,* 190 N. C. 169 (129 S. E. 406).

Our attention is called to no fraudulent act of plaintiff's in making the sale or in the execution of the contract, and we find none in the record.   We think the claim without merit.   Defendant could and should have read it, and, if not understandable, obtained its explanation before signing.

3. That the measure of damages provided in the contract should be construed as a penalty and not as liquidated damages, and that there was no damage proven. To agree in advance upon some manner of measuring damages for breach of this contract, owing to the difficulty of determining them, seems to us to have been quite necessary. The provision agreed upon was as nearly as possible based upon compensation, and cannot be called unreasonable. We see no reason for disregarding the manifest intent of the parties and call it a penalty, when this is the very thing they desired to avoid. Indeed, in view of the holding of this court in passing upon a damage contract provision identical with the one under consideration, the question can hardly be regarded an open one. See *New Prague Flouring Mill Co.* v. *Hewett Grain & Provision Co.*, 226 Mich. 35. There Justice BIRD, writing for the court, said:

"Complaint is made of the rule of damages given to the jury. The rule submitted to the jury was the rule agreed upon by the parties in the contract. This stipulation provided in detail what damages should be recovered, if any, in the event the defendant breached the contract. We do not think the rule agreed upon by the parties was so out of the range of actual damages as that they could be called penalties."

In view of the foregoing, we are persuaded the contract is valid and binding upon the parties and that, upon its breach by defendant, plaintiff is entitled to recover liquidated damages in the manner and as therein provided.

Judgment reversed and new trial granted, with costs to plaintiff.

SHARPE, C. J., and BIRD, STEERE, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.