# SCHOOL DISTRICT NO. 1, ITASCA COUNTY, v. SECURITY STATE BANK OF GRAND RAPIDS AND OTHERS.[1]

November 28, 1930.

Nos. 28,088, 28,089.

[1]Reported in 233 N. W. 296.

538

*Baldwin, Baldwin, Holmes & Mayall,* for appellant.

*Alfred L. Thwing, Willard A. Rossman, C. C. McCarthy, Henry J. Fletcher* and *Jesse Van Valkenburg,* for respondents S. L. Sather, George F. Kremer, Alfred L. Thwing, Willard A. Rossman, Keo Leroux, E. A. Kremer, J. F. Delaney, E. C. Kiley, M. M. Hursh, L. A. Whittemore, and A. V. Storm.

*Mitchell, Gillette & Carmichael,* for respondent L. A. Rossman.

Holt, J.

The appeal is by plaintiff from orders denying a new trial in two actions upon depository bonds, the trial having resulted in findings and conclusions of law in favor of the sureties in each case.

For several years prior to 1922 the Security State Bank of Grand Rapids had acted as a depository for plaintiff and in 1921 had furnished it a $75,000 depository bond, which the school board considered adequate to protect the moneys of the district deposited in that bank up to the time bonds in the sum of $250,000 were to be issued and sold for the purpose of erecting a high school building in Grand Rapids. Mr. Aiton was treasurer of the school district and the president in active charge of the bank. The two other members of the school board were Arscott and Snyder. Some few days before the money was to be received from the sale of the building bonds the school board met, and it was concluded that the depository bonds of the Security State Bank and the First National Bank of Grand Rapids were inadequate to protect the deposits occasioned by the sale of the building bonds; and it was left to Mr. Aiton to secure additional depository bonds from those banks. The First National Bank gave such bond in the sum of $50,000. The Security State Bank gave two such bonds, each in the sum of $50,000. The first was filed with the school board June 24, 1922, and an entry in the minutes shows that it was accepted on that date; the second bond was filed and accepted on July 5, 1922, as shown by the minutes. Since the bonds are similar in form, were given under the

same circumstances and for the same purposes, and there is no claim that the sureties on the last bond have any better defense than the sureties upon the first, no reference hereinafter need be made to the second bond.

Mr. Aiton procured all the sureties; and there can be no question but that the sureties were obtained upon Mr. Aiton's assurance that the bond was for the purpose of protecting the deposits coming from the sale of the building bonds; that all such deposits would be paid out in a few months in the construction of the high school building; and that the bond was only temporary for that special purpose. There is conflict between the three members of the school board as to the purpose of the board in exacting the bond, the two members maintaining that it was in each instance an additional depository bond, and Mr. Aiton that it was for the special purpose of securing the deposits for the high school construction. We think the court's findings in so far as Mr. Aiton's version is adopted cannot well be disturbed by us. His testimony was strongly fortified by this circumstance: The other two members directed him to notify the First National Bank to furnish a bond, and he promised to procure a bond or bonds from the Security State Bank. He acted at once, informing the First National Bank and all the sureties on the two bonds the Security State Bank gave that the bonds were but temporary to secure the deposits from the sale of the high school building bonds, which deposits would all be exhausted in a few months for the construction of the building. So far as the Security State Bank was concerned, all moneys from whatever source went into one and the same deposit account; but it is admitted that all of the money deposited from the proceeds of high school building bonds was paid out in the construction of the high school several months prior to the closing of the Security bank; also that when said bank did close there was $51,093.10 to the credit of the school district in its general deposit account with said bank.

The decision herein must turn upon the question whether the clear and unambiguous language of the bonds in suit could be varied or contradicted by parol. The substance of the findings challenged,

540

as founded upon oral testimony admitted over objection, that the terms and conditions of the bond could not be varied or restricted by parol evidence, may be thus stated: That plaintiff agreed with the bank that the additional depository bonds should cover only the high school building funds and should remain in effect only so long as such building funds should remain on deposit; that the bank was specially designated as a depository of such building funds; that the depository bonds in suit were made, delivered, accepted, and approved within the limitations of such special designation; that plaintiff in accepting the bonds so intended they could be limited; that the bonds were a part of the contract containing such special agreement of limitation; and that thereafter the high school building funds and other funds of plaintiff were deposited only pursuant to such limitation.

Apart from the bonds themselves there was no writing affecting them except entries in the minutes or records of the school board for June 24, 1922, stating: "An additional depository bond in the sum of $50,000 was received from the Security State Bank with S. L. Sather" and other named sureties, and a like entry for the other bond on July 5, 1922. The plaintiff is the obligee in the bond, the bank the obligor, respondents the sureties, and the condition is in these words:

"The condition of this obligation is such that if the Security State Bank of Grand Rapids, which has been designated and selected as a depository of the said School District No. One in Itasca County, Minnesota, shall and will safely keep all or any of the moneys of said district deposited with it and pay or repay all or any of such moneys in said bank at any time upon proper demand therefor, either to the treasurer of said district or his order, or to such other person as may be authorized legally to receive the same from said bank, and shall in all things comply with the laws and lawful regulations appertaining thereto, then this obligation shall be void, otherwise to remain in full force and effect."

It is plain that the findings vary, restrict, and limit the obligation of the written condition of the bond which covers all moneys of

plaintiff without regard to source. To let this clear and unambiguous language be limited and restricted by parol evidence to money derived solely from the sale of high school building bonds is contrary to settled law. A few citations from our late cases so state. In Shinners v. Ford, 151 Minn. 328, 186 N. W. 704, 705, it was claimed, as here, that the writing did not cover the entire contract, that it so shows, and therefore the parol evidence was admissible. This court answered [151 Minn. 330]:

"But it is well settled that even in such cases parol evidence is not admissible to contradict or vary those provisions of the contract which the parties have committed to writing." The various prior decisions of this court are cited.

The syllabus in Marshall Milling Co. v. Hintz-Cameron Co. 156 Minn. 301, 194 N. W. 772, reads:

"Where a written contract is made in part performance of an oral agreement, it is only the matters not covered by the written contract that may be proved by parol testimony."

To the same effect are Merchants Nat. Bank v. Bryngelson, 160 Minn. 205, 199 N. W. 905; Osterberg v. Section 30 Development Co. 160 Minn. 497, 200 N. W. 738; Dakota State Bank v. Winona Wagon Co. 162 Minn. 445, 203 N. W. 212; Brown v. Backer, 166 Minn. 50, 207 N. W. 20.

The court is of the opinion that the oral testimony received over the objection of plaintiff, in so far as it entered the findings above set out, was ineffectual to vary, limit, or restrict the condition of the bonds to only that part of plaintiff's money which was derived from the sale of the bonds issued for the construction of the high school and was deposited in the bank by the school treasurer.

The respondents contend that the school board made Aiton its agent to procure the bonds and hence his representations bound the board. The answer is that, in so far as the bonds in suit are concerned and the sureties thereon, Mr. Aiton acted for the Security State Bank and not for plaintiff. When the question of additional bonds came before the board he assured the board that the Security

State Bank would furnish them, and in this he must be understood to have made the promise as president of the bank. The sureties must have understood that they accommodated the bank in the first place in executing the bond. At any rate, Mr. Aiton, being president of the obligor in the bond, could not very well act for the obligee or make representations in its behalf. Such cases as Martin v. Common School Dist. No. 61, 93 Minn. 409, 101 N. W. 952; Solway State Bank v. School Dist. No. 26, 179 Minn. 423, 229 N. W. 568, cited by respondents, are not in point for the reason stated, that the respondents were sureties for the bank and not for plaintiff.

As already intimated, the learned trial court did not consider that the parol evidence rule was infringed. In this respondents concur. They also assert that the findings make out a case for reformation of the writings, and, that being true, the judgment could be rendered in their favor without the formality of a decree of reformation. "The right to a reformation may be shown defensively, and, if so shown, the court will treat the defective instrument as reformed." Leach v. Leach, 162 Minn. 159, 202 N. W. 448. First Nat. Bank v. N. W. Trust Co. 181 Minn. 115, 231 N. W. 790. But while the findings may justify reformation, the question recurs whether such findings were not based upon testimony received over the objection that the parol evidence rule was violated, and under the cases above cited it is held that it did.

The all important question as it appeared to the trial court was to ascertain the real determination of the school board as to the terms of the designation of the depository. Such determination not having been reduced to writing as the statute required, the court concluded it was necessary to ascertain the same by oral testimony, the only obtainable evidence. The argument of respondents is also along that line and is in substance this: The bond was intended as a statutory depository bond. As to the bank it became a de facto depository bond (School District No. 1 v. Aiton, 173 Minn. 428, 217 N. W. 496). Such a bond is predicated upon and is to secure a written depository agreement or designation stating the terms of

the deposit, signed by the chairman and the clerk of the school district board.   Arscott and Snyder, the chairman and the clerk, failed to reduce this agreement to writing.   It was therefore proper to prove it by oral testimony.   The bond on its face shows that it was pursuant to the agreement or designation the statute contemplates, for it recites that the bank "has been designated and selected." (This cannot be said to refer to designation of the $75,000 bond of 1921, and if it could be so said, there was no more proper designation than now.)   The designation or agreement and the bond are two essential parts of the one transaction.   Part of a single transaction may be evidenced by writing and part may rest in parol.   The bond also on its face reveals an incompleteness and ambiguity which necessitates evidence de hors the writing in this, that the statute prescribes that the school board may designate a depository for a period "not exceeding three years."   This bond contains no limitation.   Therefore, since the statute requires a limitation, it would be permissible to show by parol for what time it was in fact given. Again, it cannot be held that a bond of this character was to continue forever as it purports on its face; therefore there would be no contradiction or variation of its terms by parol proof of the time intended; and hence it was not error to admit oral testimony that it was limited to the time that any of the high school building fund remained in the deposit.

The statute was undoubtedly designed for the purpose of relieving the treasurer and his bondsmen from responsibility for the school money deposited in a bank (G. S. 1923 [1 Mason, 1927] § 2837); and also to assure the school district some agreed compensation for the use of the money.   The depository bank under the statute becomes the debtor of the district and not a mere bailee.   The importance of a full written designation expressing the terms of the deposit is therefore apparent.   The pertinent parts of G. S. 1923 (1 Mason, 1927) § 2836, the law authorizing banks to become depositories of school moneys, read:

"The officers of the several common and independent school districts in this state may in their discretion, select and designate as

a depository or depositories for school district moneys, any national or state bank, or banks, for a period not exceeding three years on the execution by such bank or banks of a sufficient bond to the school district * * * and thereupon may require the treasurer to deposit all or any part of the school district's money in such bank or banks * * *. Such designation shall be in writing and shall set forth all the terms and conditions upon which the deposits are made, be signed by the chairman and clerk or president and clerk as the case may be, and filed with the clerk. That thereupon such bank or banks shall become a legal depository or depositories for school district moneys, and thereafter the school district treasurer shall deposit such school district moneys therein as he shall be required from time to time to deposit by such school district officers."

It must be conceded that under this statute the time for which a depository bank may be designated need not be three years. It may be less. Also, the school board could have required the treasurer to deposit the moneys from the sale of the high school building bonds in a depository bank where no other school moneys were allowed to be deposited. And there can be no question but that the occasion for the bonds in suit and the $50,000 bond given by the First National Bank, at about the same time, was the large funds to be temporarily on deposit while the high school was constructed from the money derived from the sale of the high school building bonds. The bond was undoubtedly given and accepted in the belief that the statute had been complied with. Through inadvertence or ignorance the chairman and the clerk of the board failed to put in writing the part of the transaction which the statute required to be so put and signed by them, and it would seem reasonable to hold that the school district should not be heard to object to oral testimony to show the terms and conditions of the designation pursuant to and to secure the performance of which the bond was executed.

To the point that the bond was only a part of a single transaction or contract and, that being so, parol evidence was admissible to

prove the entire contract and its application to the subject matter, respondents cite, among other cases, Germania Bank v. Osborne, 81 Minn. 272, 83 N. W. 1084; Potter v. Easton, 82 Minn. 247, 84 N. W. 1011; Drovers C. L. & I. Co. v. McGraw, 150 Minn. 50, 184 N. W. 365; McGrath v. Pothen, 168 Minn. 206, 209 N. W. 752; Wilmot v. Minneapolis A. T. Assn. 169 Minn. 140, 210 N. W. 861. To the writer respondents' argument is convincing; but the court is of the opinion that the bond and the acceptance thereof, recorded in the minutes of the board meeting, constitute the entire transaction, and that no oral testimony was admissible to vary or restrict the coverage of the bond solely to the money derived from the sale of the high school bonds, and that the cases relied on by respondents are not at war with those first above cited. Hence, eliminating the testimony and the findings which limit the bond to high school building, there is no defense made out.

Appellant asks for a reversal with directions to the trial court to make findings and order judgment in its favor. This court is of the opinion that without violation of the parol evidence rule facts cannot be proved which would justify a judgment in respondents' favor; therefore the orders are reversed with direction to the trial court to amend its findings of fact and conclusions of law and enter judgment for plaintiff.

WILSON, C. J. (concurring).

I concur in the result.

HILTON, J. took no part.