## SCHMINKE MILLING CO. v. DIAMOND BROS. et al.

### No. 11235.

Circuit Court of Appeals, Eighth Circuit.
Oct. 21, 1938.

Rehearing Denied Nov. 14, 1938.

Allan A. Herrick and Richard F. Boyer, both of Des Moines, Iowa (McMartin, Herrick, Sloan & Langdon, of Des Moines, Iowa, on the brief), for appellant.

L. J. Cohrt, of Waterloo, Iowa (B. F. Swisher, of Waterloo, Iowa, on the brief), for appellees.

Before GARDNER, SANBORN, and BOOTH, Circuit Judges.

GARDNER, Circuit Judge.

This is an action brought by appellant as plaintiff to recover liquidated damages on account of the alleged unwarranted cancellation of a contract. It will be convenient to refer to the parties as they appeared in the lower court.

Plaintiff entered into a written contract with the defendant Diamond Brothers, by which it agreed to sell, and the defendant agreed to buy, 5,040 barrels of flour at $5.95 per barrel. In this contract, Schminke Milling Company, of Nebraska City, Nebraska, was designated as seller, and Diamond Brothers, of Cedar Falls, Iowa, was designated as buyer. The contract provided that on directions to be furnished by the buyer, scattered shipments in not less than carload lots were to be made to May 1, 1937, the flour to be transported to Cedar Falls, Iowa. It was recited that the contract "constitutes the complete agreement between the parties hereto; and cannot be changed in any manner except in writing subscribed by Buyer and by a duly authorized officer of Seller." It also contained recital that it was subject to confirmation by the seller at Nebraska City, Nebraska. The contract contained conditions, so far as material to this action, as follows:

"Shipments: Subject to the lien of Seller for the unpaid purchase price, delivery of goods by Seller to the carrier at point of shipment shall constitute delivery to Buyer. Buyer shall furnish Seller shipping instructions with package assortments (and on sales made on a bulk basis, the necessary packages) at least ten (10) days before the time of shipment.

"If there is more than one installment of goods shipped or stipulated herein to be shipped, this contract shall be construed to be severable as to each installment, except where such construction would be in direct conflict with the provisions hereinafter set forth under 'Rights of Seller' and 'Rights of Buyer,' and breach or default of either Buyer or Seller as to any installment or installments shall not give the other party a right to cancel this contract except as herein otherwise expressly provided.

\* \* \* \* \* \* \* \*

"Rights of Buyer: If the Buyer has furnished shipping instructions with package assortments (and on sales made on a bulk basis, the necessary packages) within the time prescribed by this contract, and should Seller then fail to make shipment or shipments within the time specified in this contract, unless for causes beyond Seller's control, Buyer may, as his sole remedy for such breach, exercise one of the following options:

"(a) Cancel the contract as to the portion thereof on which Seller is in default under the provisions of this contract; or

"(b) Terminate the contract as to the portion thereof on which Seller is in default under the provisions of this contract, and within twenty-four (24) hours from such termination (Sundays and legal holidays excluded) purchase an equal quantity of goods of the same kind and grade and recover from Seller as liquidated damages the excess of the price so paid over the purchase price named herein, and in addition thereto, in the case of flour, recover a sum equal to one per cent (1%) of the contract price named herein.

"In case Buyer does not intend to accept any further deliveries under this con-

tract he may so notify the Seller in writing and in such case contract shall be considered terminated as of the date of receipt by the Seller of such written notice; and the amount of Seller's damages will be determined as of date of receipt of such written notice, in accordance with the rule for ascertaining damages on termination of contract by Seller as hereinafter provided under 'Rights of Seller.'

"Rights of Seller: As to any of the above goods which have been shipped and which Buyer wrongfully fails or refuses to accept, Seller may resell the same at public or private sale without notice, any time within ninety (90) days after such failure or refusal, and recover from Buyer difference between the above purchase price thereof and the price obtained on resale, if latter be less than former; also all incidental loss and expense, all demurrage, etc., and any carrying charges unpaid on such goods. Resale anywhere in the usual course of Seller's business or at any terminal market or at or near destination shall always be proper and price received conclusive, unless bad faith is clearly proven.

"As to any unshipped flour covered by this contract, should Buyer either:

"(a) Fail to furnish shipping instructions with package assortments (and necessary packages if sale is made on a bulk basis) as herein provided under paragraph entitled 'Shipments'; or

"(b) Default in any payment due to the Seller on this or any other contract between the parties; or

"(c) Notify Seller that he does not intend to accept any further deliveries under this contract; or

"(d) Become insolvent or be adjudged bankrupt; or

"(e) Become otherwise legally incapacitated from performing his part of this contract; or if a receiver or Trustee is appointed to take charge of Buyer's business, or in case Buyer is an individual or a partnership, should any change take place in ownership of Buyer's business, then, in any of said events, Seller may:

"(1) Cancel the contract; or

"(2) Terminate the contract as to any unshipped balance, and, for each barrel of flour unshipped, recover from Buyer as liquidated damages a sum to be computed by the following formula:

"(a) One-sixth (1/6¢) cent per barrel per day for each day from date of contract to date of termination; plus

"(b) Twenty (20¢) cents per barrel, as the cost of selling; plus

"(c) Amount of decline, if any, per bushel in the average market price of cash wheat in carload lots at the mill, or basing point (at Seller's option), between date of contract and date of termination, multiplied by four and six-tenths (4.6) times the number of barrels of flour remaining unshipped.

"In case of a rise in such price of such wheat between said dates, Seller shall recover the sums specified in (a) and (b) above, less the amount of such rise per bushel, multiplied by four and six-tenths (4.6) times the number of barrels of flour remaining unshipped. Such rise in such price shall be credited to the amounts provided in (a) and (b) above solely in reduction of damages.

\* \* \* \* \* \* \* \*

"Provision for Automatic Extension: If the Buyer shall fail to furnish shipping instructions with package assortments (and necessary packages if sale is made on a bulk basis) to reach the Seller at his main office ten (10) days before the expiration of original contract period, and if the Buyer shall fail to notify Seller that he does not intend to accept any further deliveries under this contract, then (unless the Seller elects to exercise his right to cancel or terminate the contract) this contract shall, without notice, automatically be extended from day to day until Buyer furnishes shipping instructions with package assortments (and necessary packages if sale is made on a bulk basis) in accordance with the provisions of paragraph entitled 'Shipments,' or until Buyer notifies Seller that he does not intend to accept any further deliveries under this contract, or until Seller exercises his rights provided herein to cancel or terminate the contract; and for each day during which the contract is thus automatically extended, Buyer will pay Seller carrying charges at the rate of one-sixth (1/6¢) cent per barrel of flour per day, and one (1¢) cent per ton of feed per day."

On trial of the action in the lower court, plaintiff and defendant both introduced evidence. At the close of the evidence, each of the parties moved for a directed verdict in its behalf. The court thereupon discharged the jury and the

cause was submitted to the court, who in due time made findings of fact and conclusions of law.

There was no dispute in the evidence. Plaintiff, a Nebraska corporation, owns and operates a flour mill at Nebraska City, Nebraska, and at all times pertinent to this action was engaged in manufacturing and merchandising flour and other mill products. The defendant is a co-partnership, consisting of Samuel L. Diamond and Paul Diamond, both of whom are citizens of the State of Iowa, with the principal place of business of said co-partnership in the City of Cedar Falls, Iowa, and during all the times pertinent to this action this co-partnership owned and operated a chain of forty-two grocery stores in the State of Iowa, through which it sold flour at retail. Following the execution of the contract, defendant began to order shipments of flour according to its needs at its respective stores, and shipments were made as ordered for a number of weeks without complaint. On February 9, 1937, a car of flour was ordered for defendant's store at Traer, Iowa, which was not shipped. Other orders followed, and delays and failure to ship occurred. On April 13, 1937, plaintiff wrote defendant relative to the failure to ship the car to Traer, stating that, "Our mill has been shut down for about two and a half weeks now. We have completely rebuilt our engine and repaired the entire mill. We expect to get started today and will ship your car immediately. We are sorry this order was mislaid." Defendant continued to send in orders for shipments through April and May, some of which were made and some of which were not made. On June 5, 1937, defendant wrote plaintiff, calling its attention to its failure to make a number of shipments, and in that letter, among other things, said: "The market today is far lower than our contract and it is unfair that we should continue to take out high-priced flour while much of it could have been sold a long time ago, had you made shipments promptly; and since you are unable to fill our orders, we are cancelling the balance of our contract."

There were 5,040 barrels of flour called for by the contract. At the time of the receipt of this letter of June 5, 1937, shipping orders had been given for 2,730 barrels, of which 2,100 barrels had been delivered, leaving 630 barrels upon which deliveries were in default. No shipping instructions had been given as to the remaining 2,310 barrels of flour.

The court, in its conclusions of law, expressed the view that the contract was not a contract for delivery of goods by stated installments so as to make it a severable one; that the provisions of the contract for liquidated damages to the plaintiff on account of the buyer's failure to receive, applied only where the buyer's refusal to receive was without adequate cause; and that the defendant was, as a matter of law, under the undisputed facts justified in cancelling the contract as to undelivered portions on June 5, 1937. Having determined the issues in favor of defendant, the court entered judgment of dismissal on the merits, from which judgment the plaintiff prosecutes this appeal.

In seeking reversal, plaintiff in effect contends: (1) that the contract is one to sell goods to be delivered by stated installments to be separately paid for; and the seller's default in delivering certain installments does not justify the buyer in rescinding or terminating the entire contract and refusing to accept the undelivered goods; (2) that all former conflicts of opinion on the question of the right of rescission of an entire contract for a single breach have been set at rest by the adoption of the Uniform Sales Act; (3) the parties to the contract had a right to stipulate for an exclusive remedy for defective deliveries, and having so done are bound by the terms of their contract.

The lower court held, and both parties concede, that the contract is a Nebraska contract, and hence, is to be construed in accordance with the laws of that state, notwithstanding the fact that the action was tried in the State of Iowa.

The Uniform Sales Act has been adopted by the State of Nebraska and also by the State of Iowa.

Nebraska Comp.St.1929, § 69-445, reads as follows:

"Delivery in Instalments.

"1. Unless otherwise agreed, the buyer of goods is not bound to accept delivery thereof by instalments.

"2. When there is a contract to sell goods to be delivered by stated instalments, which are to be separately paid for, and the seller makes defective deliveries in respect of one or more instalments, or the·

buyer neglects or refuses to take delivery of or pay for one or more instalments, it depends in each case on the terms of the contract and the circumstances of the case, whether the breach of contract is so material as to justify the injured party in refusing to proceed further and suing for damages for breach of the entire contract, or whether the breach is severable, giving rise to a claim for compensation, but not to a right to treat the whole contract as broken."

Section 69-476 of the same Act reads as follows: " 'Divisible contract to sell or sale' means a contract to sell or a sale in which by its terms the price for a portion or portions of the goods less than the whole is fixed or ascertainable by computation."

The contract here provides for delivery on directions to be furnished by buyer of "scattered shipments" in carload lots, and the contract likewise provides for separate payment for each consignment or shipment. There have been defective deliveries as to three cars, aggregating 630 barrels of flour. It seems necessary to determine whether this contract properly construed is entire or divisible, because the quoted Nebraska statute provides that "it depends in each case on the terms of the contract and the circumstances of the case, whether the breach of contract is so material as to justify the injured party in refusing to proceed further and suing for damages for breach of the entire contract, or whether the breach is severable, giving rise to a claim for compensation but not to a right to treat the whole contract as broken."

No fixed formula has been discovered or announced which furnishes an infallible test for determining in all cases what contracts are severable and what are entire, but the courts are agreed that the intention of the parties is of controlling importance in determining the question. Ordinarily, this intention is to be gathered by a fair construction of the terms and provisions of the contract itself and by the circumstances of the transactions giving rise to the issue. As an aid to ascertaining the intention of the parties it is proper to consider whether the contract is to be performed only as a whole and whether each and all of its parts are interdependent and common to one another and to the consideration, or whether in its nature and purpose it is susceptible of division and apportionment.

Generally, if the part to be performed by one party consists of several and distinct items, and the price to be paid by the buyer is apportioned to each item, the contract is severable (Blue Valley Creamery Co. v. Consolidated Products Co., 8 Cir., 81 F.2d 182), unless the contract by its terms clearly indicates the intention of the parties to treat it as entire; but, manifestly, the severable nature of the contract may be considered in determining the intention of the parties.

By its specific terms, the contract here provides that if there is more than one installment of goods shipped or to be shipped, it shall be severable as to each installment, unless in conflict with the provisions under "Rights of Seller," and "Rights of Buyer." The contract also explicitly provides that, "Breach or default of either Buyer or Seller as to any installment or installments shall not give the other party a right to cancel this contract except as herein otherwise expressly provided." The flour was to be delivered in carload lots on order of the buyer, and to be paid for at $5.95 per barrel. There is no difficulty in apportioning the consideration nor in ascertaining or calculating its amount upon any installment, so that there is nothing in the nature of the contract which necessitates a holding that it is entire, and the intention of the parties is definitely declared in the contract itself. This expressed intention of the parties that the contract shall be severable as to each installment is not, we think, in conflict with any of the other provisions of the contract.

The contract contains provision that if seller fails to ship within the time specified in the contract, the buyer may invoke certain remedies. It could cancel the contract as to the portion in default, or it could terminate the contract as to such portion, and within twenty-four hours buy an equal quantity and quality of goods and recover from the seller the excess of the purchase price over the contract price, plus certain stipulated damages. As has been observed, there was defective delivery of 630 barrels of the 2,730 barrels ordered. No shipping instructions whatever had been given as to the remaining 2,310 barrels of flour, and as to this flour the seller was not in default. Defendant claims the right, however, to cancel the entire contract, and this right, in the final analysis, must depend upon whether or not the contract is an entire, indivisible one.

In Henry H. Cross Co. v. Texhoma Oil & Refining Co., 8 Cir., 32 F.2d 442, this court considered two contracts for the purchase of oil. Each contract contained provision that, "This contract shall be construed as a divisible contract." After having received certain shipments, the buyer refused further shipments. It was his contention that he was justified because a prior breach in certain deliveries had occurred. In the course of the opinion it is said [page 446]: "The contract by its terms was divisible, and the breaches complained of might give rise to claim for compensation, or action for damages, but not to right of rescission."

The facts and issues involved in King Flour Mills Co. v. Bay City Baking Co., 240 Mich. 79, 214 N.W. 973, are very similar to those here involved. Referring to a similar contract, the court said [page 974]: "By the terms of the contract shipments were to be made during October, November, and December, 1925, on directions of the buyer. Each order and shipment constituted a separate transaction."

In Yerxa, Andrews & Thurston, Inc. v. Randazzo Macaroni Mfg. Co., 315 Mo. 927, 288 S.W. 20, there was a claim of breach of contract as to certain deliveries, it being contended that the buyer had the right to cancel the contract. In the course of the opinion it is said [page 37]:

"We know of no principle of law which prevents the parties from agreeing that a contract shall be severable as to each installment of goods shipped or delivered thereunder, provided that it be clear (as here) that such is the intention of the parties. * * *

"The parties here have agreed, in no uncertain language, not only that the contract shall be severable as to each installment of flour shipped, but that seller's breach or default as to any installment shall give the buyer no right to refuse any other installment. Under such circumstances, it has been held that the buyer has no right to rescind the contract or refuse subsequent shipments on the ground that prior shipments or installments were inferior in quality or unfit for the use intended."

█ But it is urged by appellee that the time within which the contract was to have been fulfilled by the plaintiff expired May 1, 1937, or at least the right to deliver scattered shipments expired at that time, and that even though the contract were originally a severable one, after that date, though the contract were extended from day to day, it was no longer severable but became an entirety. As has been observed, the contract contains provision for its automatic extension from day to day without notice until the buyer furnishes shipping instructions, or until the buyer notifies the seller that he does not intend to accept any further deliveries. After May 1, 1937, the defendant ordered deliveries; for instance, under date May 6, 1937, it ordered one car of flour, which was shipped by plaintiff, received and paid for by defendant. Again, on May 20, the defendant ordered another car of flour, which was likewise shipped by plaintiff, received and paid for by defendant. On May 22, defendant ordered one car of flour, which was delivered and paid for. Two days later, on May 24, it ordered another car of flour, and on May 28, it ordered three cars of flour. The orders of May 24 and 28 had not been shipped when defendant, by its letter of June 5, 1937, terminated the contract. Under the terms of the contract, however, the plaintiff had ten days from the receipt of the order in which to make shipment, and this time had not expired when defendant terminated the contract. When the contract was thus automatically extended, the extension carried with it the provision for the making of delivery on order of the defendant, and, manifestly, this is the construction which the parties themselves placed upon the contract.

Apparently, at the time defendant terminated the contract the market was below the contract price, and according to defendant's letter, in which it stated that, "It seems you are interested in shipping flour only when the market is low and weak, which is all right for you but not so good for us," defendant should not have anticipated that plaintiff would make default in complying with the current orders. In any event, it had not done so at the time of the writing of this letter. Self-interest, if nothing else, would seem to have prompted plaintiff to comply with current orders and furnished defendant with assurance that they would be complied with.

The nature of the contract was not, we think, changed when it was automatically extended.

█ It is urged that there were involved in these transactions "other circumstances" which warranted defendant in rescinding the contract. The other circumstances relied upon are the faulty delivery or failure

to deliver as ordered, the 630 barrels of flour. It is observed that when these failures occurred, defendant did not rescind its contract, but continued thereafter to order, receive and pay for shipments. Defendant, after the alleged breach of the contract, continued to demand that plaintiff continue to execute it. The question is considered by the Supreme Court of Nebraska in Nathan Elson & Co. v. H. Beselin & Son, 116 Neb. 729, 218 N.W. 753, where, among other things, the court says [page 755]:

"Even though defendant may have been in default of its payments under contract terms, the plaintiff continued to carry on under the agreement by accepting and filling orders from the defendant, and therefore must be deemed to have waived such breaches on the part of defendant.

"Where the aggrieved party does not act upon the breach by the other of the terms of a contract, but does anything which draws on the other party to execute its agreement after default in respect to time, or which shows it is deemed a subsisting agreement after such default, it will amount to a waiver, as will also a failure to avail one's self of it at the first fit occasion and before or when the other begins, after default, to act again on the agreement."

If these defaults amounted to such circumstances as warranted cancellation, they were waived by the defendant when it thereafter received deliveries made by plaintiff pursuant to the contract. The defendant had the right to treat the contract as continuing, and having failed to give seasonable notice of its election, if it had one, to terminate the contract for these defaults, it must now be deemed to have waived this right of cancellation on account of past breaches. In the instant case there are explicit provisions in the contract which we think can not be overriden or rendered nugatory by resort to "other circumstances."

But it is argued that the Sales Act does not depend upon the construction of the contract as either entire or severable. Manifestly, the Sales Act contemplates a contract between the parties. Parties to a contract may ordinarily stipulate for a particular remedy, and if so, the stipulated remedy is exclusive. Thus, in International Milling Co. v. North Platte Flour Mills, 119 Neb. 325, 229 N.W. 22, the Supreme Court of that state had before it this same Uniform Sales Act. The action was for liquidated damages for refusal to take 750 barrels of flour under a contract of sale with a formula for computing damages strikingly resembling the one involved in the instant case. In the course of the opinion the court said [page 24]:

"In substance, all of the terms of the contract of sale here in dispute were before the Supreme Court of Ohio in the case of Sheffield-King Milling Co. v. Domestic Science Baking Co., supra [95 Ohio St. 180, 115 N.E. 1014]. * * *

"The Ohio court in the case last above referred to sustained the contract and a recovery thereunder on behalf of the seller against a defaulting purchaser, computed in like manner as provided in the contract presented in our instant case. Similar contracts were sustained and like recoveries permitted in the following cases: International Milling Co. v. Reierson [55 S.D. 139], 225 N.W. 218; Christian Mills v. Berthold Stern Flour Co., 247 Ill.App. 1; Shane Bros. & Wilson Co. v. Striglos, 228 Ill.App. 397; New Prague Flouring Mill Co. v. Hewett Grain & Provision Co., 226 Mich. 35, 196 N.W. 890; H. H. King Flour Mills Co. v. Bay City Baking Co., 240 Mich. 79, 214 N.W. 973. It will be further noted that each of the decisions above cited were made in states which had prior thereto adopted the Uniform Sales Act and each were made while that act was in full force and effect; and though this legislation may not have been referred to by the judges writing the opinions, still the decided harmony with the principles of the Uniform Sales Act, characterizing the language of these decisions, supports the conclusion that the terms of that legislation must be deemed at least presumptively controlling. But it is also true that in no state having adopted this legislation, so far as we have been able to ascertain, has a recovery on this class of contracts ever been denied."

The Supreme Court of North Dakota, in Minneapolis Threshing Machine Co. v. Hocking, 54 N.D. 559, 209 N.W. 996, considered a contention that a contract of sale controverted the Sales Act. In that opinion it is said [page 1000]: "The Uniform Sales Act is not intended to be a restriction upon the rights of parties to contract. It is simply a statement of the rules applicable in the construction of such contracts as may be made. It does not contract for the parties; it measures their rights

under the contracts they themselves make. It does not purport to create a mold in which all such contracts must be cast. There is nothing contained within its provisions which can be said to prohibit the inclusion of any lawful term that the parties may desire in a contract for sale, nor is there anything therein contained which can be said to avoid any lawful term or provision that may be thus mutually agreed upon."

The decision of the Supreme Court of Nebraska in International Milling Co. v. North Platte Flour Mills, supra, is not only persuasive, but, we think, controlling.

There is no finding by the court and no evidence warranting a finding that the plaintiff abandoned or renounced the contract, but it appears from the undisputed facts that it was at all times claiming to act and asserting rights thereunder. Both of the parties were acting under this contract. In rescinding or terminating the contract, the defendant recognized that up to that time it was an existing contract governing the rights of the parties. We conclude that the contract was severable and not entire; that the provisions specifying the remedies for each breach were binding upon both of the parties, and that while the defendant may have been entitled to make claim for damages for plaintiff's breaches, it did not have a right of rescission of the executory part of the contract.

The judgment appealed from is therefore reversed and the cause remanded with directions to grant plaintiff a new trial.