336 So.2d 1210 (1976)
CHEEZEM DEVELOPMENT CORPORATION, a Florida Corporation, Appellant,
v.
INTRACOASTAL SALES AND SERVICE, INC., a Florida Corporation, Appellee.
No. 75-855.
District Court of Appeal of Florida, Second District.
June 23, 1976.
As Corrected On Denial of Rehearing August 25, 1976.
John T. Allen, Jr., and Albert C. Werly of Fleece, Rhoades & Werly, St. Petersburg, for appellant.
Carleton L. Weidemeyer of Wightman, Rowe, Weidemeyer, Jones & Turnbull, Clearwater, for appellee.
SCHEB, Judge.
This appeal arises out of a dispute involving a plumbing subcontract between the appellant/defendant Cheezem, a developer, and the appellee/plaintiff Intracoastal, a plumbing contractor. The trial court entered judgment against Cheezem in favor of Intracoastal and also dismissed Cheezem's counterclaim against Intracoastal. We conclude the trial court erred and reverse.
During February 1974, Intracoastal, a plumbing subcontractor, entered two separate plumbing contracts with Cheezem. Intracoastal agreed to "... furnish all labor, tools, equipment, and material for performance of all plumbing and sewer work" for Cheezem's Covington and Sand Key projects in Pinellas County at contract prices of $35,950.75 and $113,595.00 respectively. Paragraph 10 of said contracts, wherein Intracoastal is referred to as contractor and Cheezem as owner, provides:
Contractor does hereby waive all right of liens or conditional bills of sale and does waive all right to file any notices in relation thereto, and does agree to remove, at his own cost and expense, all such notices or liens or conditional bills of sale or encumbrances which may be placed against said premises or any part thereof as a result of the work contracted to be done and materials agreed to be *1211 furnished by the contractor, whether such notice or notices be placed thereon by the contractor or any other person employed or otherwise engaged by the contractor in relation to said work or any materialman furnishing any material to such job, and the contractor does hereby agree to hold the owner harmless on account thereof. This agreement of waiver and indemnity shall remain in full force and effect even should any dispute arise respecting payment and/or should there be any delay on account thereof and/or should there be any default by the owner in relation to any of the agreements herein contained on the owner's part to be performed and/or in relation to payments required to be made by the owner as set forth in this contract.
Contractor agrees within five (5) days after notice and demand by the owner to cancel and discharge any notices of liens filed for work or labor performed for, or materials furnished to, the contractor, and the contractor agrees further to reimburse the owner, for any damage the owner may suffer by reason of the filing of such notices or liens or the failure to obtain cancellation and discharge thereof as herein provided, including all costs and a reasonable attorney's fee.
During April 1974, Intracoastal filed liens against Cheezem's Covington and Sand Key projects in Pinellas County. Subsequently, the parties attempted a resolve of their differences which involved certain problems concerning Cheezem's methods of making progress payments. To this end, they signed an addendum to their contracts revising procedures intending to facilitate payments by Cheezem. The addendum also presumably resolved any dispute as to the prior liens and obligated Intracoastal to satisfy them. Shortly after the addendum was signed some Intracoastal employees appeared at Cheezem's office to obtain its corporate counter signature on payroll checks as stipulated by the addendum. At that moment, Mr. Cheezem, president of the appellant company, learned that on that very day Intracoastal, for no apparent reason, had filed additional claims of lien for $6,719.75 against Cheezem's Covington project and $4,956.18 against its Sand Key project. Upon learning this, Mr. Cheezem tore his corporate signature from the payroll checks designated for Intracoastal. Additionally, by written notice furnished to Intracoastal, Cheezem demanded removal of all claims of lien and further informed Intracoastal that its plumbing contracts on both projects were cancelled.
Subsequently, Cheezem hired new plumbers to complete both projects. When Intracoastal sued Cheezem for sums it claimed were still due it, Cheezem counterclaimed for sums it allegedly expended, over and above the contract price, with other plumbing contractors it hired to complete the projects.
At the conclusion of the trial, the trial judge announced his ruling as follows:
"The Court finds that both parties were at fault in the termination of the contract.
"The Plaintiff was in fault  at fault in filing the liens contrary to his agreement.
.....
"The Defendant was in error in his conduct and in arbitrarily refusing to make a payment to laborers as he had agreed to do.
"It is to be noted that Mr. Cheezem's testimony is candid, that his primary purpose in refusing to sign the checks was perhaps a reasonable irritation in having liens filed when they had agreed not to do so.
"The Court therefore finds that both parties being at fault, ... and the law abhors a forfeiture  that the Plaintiff is entitled to be reimbursed for the consideration for which it had made to the Defendant's property upon a quantum meruit basis up until the Twenty-fourth  23rd of May when the new liens were prepared and signed."
A judgment of $4,451.26, plus interest, was thereupon entered in favor of Intracoastal against Cheezem.
*1212 In effect, the trial court determined that while Intracoastal had breached its contract and the addendum by filing the latter liens, that Cheezem had also breached the contract by removing the corporate counter signature from the payroll checks. The court overlooked the fact that the Cheezem "breach" occurred after the breach found by the court to have been committed by Intracoastal. Additionally, the court determined that Cheezem had been enriched to the extent that Intracoastal had supplied labor and materials for which it had not been paid; but, the court afforded no consideration to Cheezem's contention that it had to expend funds over and above what it would have been obligated to Intracoastal in order to complete the two jobs.
Both subcontracts were part of large condominium projects that Cheezem was developing. Each project involved substantial institutional financing. Mr. Cheezem testified that filing of these liens prevented his corporation from continuing to obtain funds from his lender on these projects. We have no doubt that breach of covenant against filing liens was a substantial breach of the contract entered into by these parties, especially since they were filed after the parties had reached an accommodation on the matter. Mortgage lenders are understandably reluctant to advance funds on a project once liens have been filed against it. As the party who initially committed a substantial breach of the contract, Intracoastal was not entitled to avail itself of a claimed subsequent breach by Cheezem. Chatlos v. Morse Auto Rentals, Inc., Fla. App.3d 1966, 183 So.2d 854; 17 Am.Jur.2d, Contracts, § 365; 17A C.J.S. Contracts § 458. Moreover, even the effect of the breach attributed to Cheezem; i.e., removal of its counter signature from payroll checks for Intracoastal, appears of little concern inasmuch as Intracoastal obtained these payroll funds from the joint bank account established by the parties, notwithstanding the lack of Cheezem's corporate counter signature on the checks.
We hold the trial court erred in awarding a judgment to Intracoastal since it committed an initial and substantial breach of its contract with Cheezem. Accordingly, we vacate the judgment against Cheezem and remand to the trial court for further proceedings on Cheezem's counterclaim. After determining the merits of Cheezem's counterclaim, the court must reconsider the $4,451.26 previously awarded to Intracoastal. If Cheezem establishes that it spent more than the original contract prices to complete the plumbing on its projects, then Intracoastal would have no entitlement for the work it previously completed without payment. This is because all monies in excess of the contract prices necessarily spent in completing the plumbing are chargeable to Intracoastal. Had Intracoastal not done this work, it would have been responsible for monies Cheezem spent in hiring another firm to do it. If, however, it develops that Cheezem completed the plumbing at less than the contract prices, then Intracoastal would be entitled to be paid for work it completed, so long as the total amount spent by Cheezem does not exceed the prices originally stipulated in its contracts with Intracoastal.
Reversed.
McNULTY, C.J., and HOBSON, J., concur.