GLICKSTEIN, Judge.
This is a timely appeal by Maxwell Dauer and Reva B. Dauer, his wife, hereinafter called the Dauers, and Lauderdale Lakes Medical Center, Inc., hereinafter called the hospital, from a final judgment and order denying rehearing. We affirm.
Peninsular Supply Company brought an action against the Dauers, the hospital, Standard Systems Corporation and the latter’s surety, Safeco Insurance Company of America, to foreclose a mechanic’s lien. Final judgment of foreclosure recited that Peninsular was due $23,377, plus interest, from the hospital, Standard and Safeco. Also included in the final judgment was an *129 award to Safeco of $9,856.01, plus interest, on its crossclaim against the hospital. A subsequent cost judgment of $8,098.14 was entered in favor of Peninsular against the Dauers and the hospital for attorney’s fees and costs.
The facts reflect the hospital to be the lessee of real property in Broward County, Florida, owned by the Dauers. On March 25,1974 the hospital entered into a contract with Standard for plumbing work in the expansion of the former’s medical center located on the subject property. Standard ran into financial difficulty in late September 1974. On November 1, 1974 Standard informed the hospital that all payments due it should be paid to its surety, Safeco. Without any additional written agreement with the hospital other than the March 25th contract and surety bond, prior to November 6, 1974 Safeco paid out over $42,000 to parties who had supplied labor or material to Standard on this job. Then, on the last mentioned date, Safeco executed and tendered to the hospital a written agreement acknowledging Safeco’s obligation to complete the contract, and providing, inter alia:
(1) Lauderdale Lakes agrees that the unpaid balances of the contract prices at the date hereof, including retainages, is in the amount of $29,542 and that it will pay that amount to Safeco for the performance of the contract and the completion of the PROJECT in accordance with the terms of the contract.
The hospital eventually executed the agreement but did not pay any of the retainage to Safeco, allegedly because the contract had not been completed.
The hospital’s basic contention was that since the specifications required domestic water and fire pumps on the ground floor of the mechanical room located in a one-story building connected to the hospital, Standard-and Safeco-were obligated to furnish and install them. The pumps appear to have cost almost $17,000, plus installation. The hospital also contended that it completed other required work and expended funds for material and labor in doing so.
Mr. C. W. Ackerman, whose firm Safeco had hired to complete Standard’s contract, disputed the hospital’s contentions. He testified that the pumps were not part of Standard’s contract; that the entire cost of his firm’s completion of the job exclusive of the pumps, did not exceed $4,500; and that his firm completed it.
In its final judgment the trial court found that the express language in Standard’s contract with the hospital eliminated any obligation of Standard below the fourth floor slab. Consequently, the court determined that any work on the ground floor pumps was not part of the contract. As shall be discussed later, this finding was essential to Peninsular’s recovery in the trial court.
Peninsular was one of the materialmen Standard had been using. Although, as noted above, Safeco paid out in excess of $42,000 to Standard’s creditors prior to November 6, 1974, it did not pay Peninsular most of its invoices because it learned that Peninsular had neglected to file a Notice to Owner. Peninsular attempted to correct its error by serving a notice to owner on December 20, 1974. It thereafter filed a Claim of Lien on January 8, 1975. Apparently, Peninsular prevailed in the trial court because it sent its belated Notice to Owner on December 20, 1974 when the Hospital was still holding the retainage. Crane Co. v. Fine, 221 So.2d 145 (Fla.1969). Had the trial court found the pumps were part of the contract, the necessary corollary of that would have been to reduce the retainage that had been held by the hospital by whatever the pumps had cost to purchase and install.
On appeal the Dauers and the hospital do not dispute the trial court’s awards to Peninsular, but they raise two other points:
I. The attorney’s fees and cost judgment of $8,098.14 in favor of Peninsular and against appellants should have been set off against Safeco’s judgment on the latter’s crossclaim against the hospital.
II. The attorney’s fees and costs incurred by appellants in the defense of the *130 mechanic's lien foreclosure brought by Peninsular should have been awarded to them and against Safeco.
I.
In support of their first point, appellants rely upon the language of the bond[1] and Standard’s March 25,1974 sub-contract with the hospital,[2] Section 713.29, Florida Statutes (1973),[3] and the theory of indemnity as a matter of law.[4] Notwithstanding the forcefulness of appellants’ arguments, there remains in our minds one overriding and determinative fact in this case; namely, the failure of the hospital to pay the retainage to Safeco prior to Peninsular’s notice of December 20, 1974. The trial court ultimately found this retainage to be $33,233.01, and, as stated above, awarded Peninsular $23,377.00 of it and the balance of $9,856.01 to Safeco because of the sums expended by the surety. Had the retainage been paid by the hospital to Safeco prior to December 20th, it follows that neither award would have been necessary or appropriate. Peninsular could not have prevailed because of its failure to send a timely notice to owner as required by Section 713.06, Florida Statutes (1973),[5] and Safeco would have been relieved of any necessity to cross-claim for the funds rightly due it.
As between Safeco and the hospital, the latter would have us look only to the original sub-contract and bond and ignore the agreement of November 6, 1974. This we cannot do. There were three, not two, instruments which governed the relationship of the parties. While it has been said that one cannot recover on a single contract unless one performs his material obligations *131 thereunder,[6] when there are interdependent contracts or instruments, we hold that one cannot enforce obligations under one in the absence of performing interdependent obligations under the others. Accordingly, the hospital was not entitled to a set-off of the judgment for cost and attorney’s fees in favor of Peninsular.
II.
As to the second point, appellants again rely on the sub-contract[7] as well as the theory of indemnity,[8] and also contend that Sections 627.428[9] and 627.756,[10] Florida Statutes (1973), apply. The same principle governs this point as did the first. Had the hospital performed, paid over the re-tainage to Safeco and tendered to it the defense of the foreclosure, the hospital would not have incurred attorney’s fees. Similarly, the Dauers would have been the beneficiaries of such performance because their obligation for attorney’s fees arose out of their failure to prevail in the foreclosure action. It naturally follows that they would have prevailed against Peninsular in the event the hospital held no retainage on December 20, 1974.
We are all blessed with 20/20 hindsight. Perhaps by this decision we are attributing to the hospital the obligation of foreseeing the necessity of delivery of the retainage to Safeco prior to December 20, 1974, because it is so clear to us now what should have *132 been done. Nevertheless, the hospital “stonewalled” the issue of whose obligation it was to purchase and install the pumps and took a similar stance on not paying over the retainage to Safeco, which had paid out over $42,000 to Standard’s creditors. The resulting effects appear not only logical but appropriate. Accordingly, we affirm.
AFFIRMED.
DOWNEY and BERANEK, JJ., concur.

. The sub-contract bond expressly provides that it remains in full force and effect if Standard does not fully perform all of its obligations under its sub-contract and pay for all labor and materials furnished in the prosecution of the work. The obligee of the bond is Lauderdale Lakes Medical Center, Inc., not Maxwell Dauer and Reva B. Dauer.

. Article Xll of the Standard sub-contract provides, in pertinent part:
If at any time there shall be evidence of any lien or claim for which, if established, the Contractor or the Owner might become liable, and which is chargeable to the Sub-Contractor, the Contractor shall have the right to retain out of any payment due or to become due, an amount sufficient completely to indemnify the Contractor or the Owner against such lien or claim. Should any claim or lien develop after all payments are made, the Sub-Contractor and his Surety shall refund to the Contractor all money that the latter may be compelled to pay in discharging such claims on the premises made obligatory in consequence of the Sub-Contractor default. The Sub-Contractor and his Surety shall pay all costs, expenses and attorneys’ fees incurred by the Owner and the Contractor, or either of them, in defending any suit brought to enforce any lien or to establish any claim against them or either of them on account of work done or materials furnished pursuant to the terms of this agreement, whether said work be done or materials be furnished by the Sub-Contractor or by others and shall pay all judgments and decrees which may be rendered against the Owner and Contractor or either of them in such suits, whether such liens or claims arise before or after final payment. No payment for work under this agreement shall be made to the Sub-Contractor until the Owner shall have paid the Contractor therefor.

. Section 713.29, Florida Statutes (1973) provided:
In any action brought to enforce a lien under part I of this chapter, the prevailing party shall be entitled to recover a reasonable fee for the services of his attorney, to be determined by the court, which shall be taxed as part of his costs.

. Travelers Indemnity Company v. Howell & King, Inc., 336 So.2d 1 (Fla.4th DCA 1976), cert. denied 341 So.2d 1086 (Fla.1976); Midway Shopping Mall, Inc. v. Corky Corp., 257 So.2d 905 (Fla.3d DCA 1972).

. Section 713.06(2)(a), Florida Statutes (1973) provided, in pertinent part:
All lienors under this section, except laborers, as a prerequisite to perfecting a lien under this chapter and recording a claim of lien, shall be required to serve a notice on the owner setting forth the lienor’s name and address, a description sufficient for identification of the real property, and the nature of the services or materials furnished or to be furnished. This notice must be served before commencing or not later than forty-five days from commencing to furnish his services or materials but in any event before the date of furnishing the affidavit under subsection (3)(d)l., of this section, or abandonment, whichever shall occur first. ...

. Chatlos v. Morse Auto Rentals, Inc., 183 So.2d 854 (Fla.3d DCA 1966); cert. denied 188 So.2d 823 (Fla. 1966); Cheezem Development Corp. v. Intracoastal Sales and Service, Inc., 336 So.2d 1210 (Fla.2d DCA 1976).

. Article IX of the Standard sub-contract provides:
Should the Sub-Contractor at any time refuse or neglect to supply a sufficiency of proper skilled workmen, or materials of the proper quality, or equipment, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, or if the Contractor is advised of any claim against the Sub-Contractor and is advised that the same is due and unpaid-the Contractor, after three (3) days’ notice to the Subcontractor by United States Mail addressed to the Sub-Contractor at the address last known to the Contractor or delivered to any employee of the Sub-Contractor shall be at liberty to provide any such labor or materials, or equipment, or satisfy any such claims, and to deduct the cost thereof from any money then due or thereafter to become due to the Sub-Contractor under this agreement. In the event of any such payment by the Contractor under this contract the Sub-Contractor and his surety jointly and severally agree to repay the same to the Contractor, on demand, with interest at the rate of six per cent per annum from the respective dates of payment, with attorneys fees, without relief from valuation or appraisement laws.

. Pender v. Skillcraft Industries, Inc., 358 So.2d 45 (Fla.4th DCA 1978); Borg Warner Acceptance Corp. v. Philco Finance Corp., 356 So.2d 830 (Fla. 1st DCA 1978); Morse Auto Rentals, Inc. v. Dunes Enterprises, Inc., 198 So.2d 652 (Fla.3d DCA 1967).

. Section 627.428(1), Florida Statutes (1973) provided:
Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of an insured or the named beneficiary under a policy or contract executed by the insurer, the trial court, or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court, shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured’s or beneficiary’s attorney prosecuting the suit in which the recovery is had.

. Section 627.756(2), Florida Statutes (1973) provided:
Section 627.428 (attorney fee) shall also apply as to suits brought by owners, sub-contractors, laborers and material men against a surety insurer under payment or performance bonds written by the insurer under the laws of Florida to indemnify such owners, sub-contractors, laborers and material men against pecuniary loss by breach of a building or construction contract; except, that the amount to be so recovered for fees or compensation of such a plaintiffs attorney shall not be more than twelve and one-half per cent of the amount which the judgment or decree awards such plaintiff under the bond (exclusive of the costs of suit and attorney fees or compensation), [sic] nor shall it be less than one hundred dollars where the judgment or decree is for more than five hundred nor less than fifty dollars where the judgment or decree is five hundred dollars or less. Such owners, sub-contractors, laborers and material men shall be deemed to be “insureds” or “beneficiaries” for the purposes of this section.