## SHAPIRO ENGINEERING CORPORATION *v.* FRANCIS O. DAY CO., INC.

[No. 125, September Term, 1957.]

*Decided January 22, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Sheldon E. Bernstein,* with whom were *Jackson Brodsky, David G. Bress* and *Mark B. Sandground* on the brief, for the appellant.

*James R. Miller,* with whom were *Lee C. Miller* and *James R. Miller, Jr.,* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal in a non-jury case is from a judgment for $12,412.23, in an action for breach of a written contract, dated December 2, 1954, whereby the appellee, plaintiff, agreed to construct storm sewers in Oakwood Knolls Subdivision, Bethesda, Maryland, and the appellant, defendant, to pay therefor an aggregate price of $43,000.00 The subdivision was laid out in two sections. Lots had been sold and some houses were under construction in the first section, so that construction was urgent. No lots had been sold in Section II. After completing substantially all of the work in the first section, the plaintiff declined to perform the work in the second section, on the ground that the defendant had failed to pay for the work performed and materials furnished in the first section, and had failed to obtain the necessary permits to enable it to perform the work in the second. It brought suit to recover the balance due and damages. The appellant defended on the ground that it was justified in refusing payment until all the work was fully completed, alleging that the contract was entire and indivisible, and that the

plaintiff committed an anticipatory breach of the contract by indicating its intention not to proceed with work in the second section at a time when there was a *bona fide* dispute as to payment for the work completed. The appellant also contends that the court applied the wrong measure of damages, and the proof did not support the damages allowed.

The contract is not a model of clarity. The construction work was required to be in conformity with the standards and specifications of the Montgomery County Department of Public Works and in conformity with a permit issued November 12, 1954, by the State Roads Commission. Under the heading "ARTICLE *II,* SCHEDULE OF PAYMENTS", it was provided that the builder "shall submit a requisition for any portion of his work completed thru 25th of each month in accordance with this schedule of payments and shall be paid for the requisition on the following 10th of month (less 10%) and title to all said material, whether placed in warehouse or on building site or building itself shall immediately vest in the owner of the property". A form of progress payments was deleted, and typed in its place was the following: "The work completed for any monies requisitioned shall have the same ratio to the total work and the total contract price respectively." Article I C. provided: "The term *work* as referred to herein shall include all labor, material, and equipment necessary to the prosecution of this contract." (Italics supplied.) Another article provided that final payment was to be made on the 10th of the month following acceptance by the public authorities. Work was to commence not later than December 6, 1954, and that portion outlined on a designated "Paving Plan" was to be completed within forty working days. Presumably, this referred to Section I. There was no provision as to the time for commencing or completing Section II, although there was testimony of an oral understanding that the builder would proceed with Section II as soon as Section I was completed.

Attached to the contract was an addendum, signed by the defendant only, wherein the defendant undertook to furnish an engineer who would supply cut sheets and do all layout work. The addendum also provided that if rock was en-

countered a price for its removal would be negotiated. The addendum also contained this clause: "Section I which is outlined on the Paving Plan shall amount to Twenty three thousand dollars ($23,000.00), and Section II will amount to Twenty thousand dollars ($20,000.00), for purposes of paying on account of this contract only."

The plaintiff began work immediately, but there were delays occasioned by the failure of the engineer supplied by the defendant, as the trial court found, to perform his work "with that degree of skill which the plaintiff had a right to expect". Specifically, the complaints were that the outlets were not properly staked out on the ground, and that the outfall shown on the plan was actually located on the property of an adjoining owner. On December 26, 1954, the plaintiff submitted its bill for $11,681.00 for work allegedly performed in accordance with the contract. On January 13, 1955, the defendant paid $10,619.00 on account, with an accompanying letter in which it complained that the requisition set forth quantities of material, labor, equipment and profit, and deducted 10% from the gross amount. The letter stated that the requisition "has no bearing on the contract because the contract is a lump sum contract with payments due on the tenth of the month for any portion of the work completed through the 25th of the previous month less 10% retainer for final payment. Based on the above we estimate your completion as of December 25, 1954 as 51.3% for a gross amount due $11,719.00 (sic) less retainer of $1,179.90, making an amount due this payment of $10,619.10 for Section 1."

On January 25, 1955, the plaintiff submitted its bill for $8,439.00 for additional work claimed to have been completed. This bill was not paid, nor was any explanation given as to why it was not paid. The plaintiff claims that it had then completed all of the work in Section I which it could perform, and that it could not finish the work completely because the outfall shown on the plan was actually located on the land of another owner, who would not permit it to enter until a right of way was procured. This right of way had apparently not been obtained at the time suit was filed on June 28, 1955. The plaintiff also claims that no

permit had been procured for the work in Section II, and that in fact no permit was obtained until the summer of 1955.

No payment has ever been received on the requisition of January 25, 1955. There was testimony that the plaintiff declined to do the work in Section II because of the failure to pay for the work performed in Section I, and because of the failure to procure a permit for Section II within a reasonable time. There was testimony that it kept equipment on the job for at least a month after Section I was completed. (This was probably in April, after the County's approval was obtained for all the work, except the outfall.) The defendant maintained that its reason for not paying the requisition was because the plaintiff had declared its intention not to go ahead with the work in Section II, which it relies on as an anticipatory breach. It also claimed that some of the work done in Section I was not up to standard, that the requisition was not based on work completed, and that there were offsets to the claim. It is undisputed, however, that no permit for the work in Section II was obtained until June 27, 1955, the last permit being in September, 1955.

The trial court found no justification for the failure of the defendant to pay the requisition of January 25, 1955, or a substantial part thereof. We agree. The items set out in the requisitions were within the fair meaning of "work" as defined, and the fact that title passed as to materials not yet in place supports this construction. The garbled clause as to a ratio between total work and total contract price could hardly change the meaning of "work completed" into a percentage of overall completion of the contract. Moreover, there was no compliance with the obligation to pay the second requisition, even on the defendant's theory of the case. The trial court found this to be a breach of the contract which justified the plaintiff in his refusal to perform further. There was no evidence that the plaintiff made any declaration of his intention not to perform until about the time suit was filed, and this is a sufficient answer to the claim of anticipatory breach on the part of the plaintiff. Plaintiff could not be compelled to go ahead with the work in Section II until permits were procured, nor was it required to tres-

pass on the land of an adjoining owner. *Baltimore Luggage Co. v. Ligon,* 208 Md. 406, 417.

Failure to pay an installment due on a building contract is generally held to be such a material breach as to excuse further performance by the builder. *Guerini Stone Co. v. Carlin Constr. Co.,* 248 U. S. 334, 344; 3 *Corbin, Contracts,* § 692; 3 *Williston, Contracts* (Rev. Ed.), § 866. This may be true, even if the contract were divisible. See 3 *Williston, Contracts* (Rev. Ed.), § 887D. Among other remedies that a builder may pursue is the remedy of a suit for damages for a total breach, which would ordinarily be the unpaid contract price less the reasonable cost of completion of the work unperformed. *Hammaker v. Schleigh,* 157 Md. 652, 668, 670; *Bush v. Construction Co.,* 88 Md. 665, 668; 3 *Corbin, Contracts,* § 693; 3 *Williston, Contracts* (Rev. Ed.), §§ 805, 842.

The appellant does not contest the allowance of $248.10 for extra work due to encountering rock. The trial court disallowed claims by the plaintiff of $1,000.00 damages for delay in the work performed, because not clearly proved, and $3,000.00 for loss of profits in Section II. In the light of testimony as to increase in the cost of pipe and labor, the trial court found there was no sufficient proof that the plaintiff would have made a 15% profit, or any profit, on Section II. He arrived at the verdict by adding the cost of the extra work to the contract price for Section I, $23,000.00, deducting the payment of $10,619.10 on account, and the defendant's estimate of the cost of completing the outfall, $1,406.39 (the plaintiff's estimate had been about $700.00), and disallowing an offset of $478.16 claimed as the cost of removing excess dirt. To the sum thus found, $11,222.61, he added interest from June 28, 1955, the date when suit was filed. In his opinion the trial court said: "The defendant, of course, contends that against any amount that may be due on Section 1, it is entitled to offset the amount it has cost the defendant to perform the work in Section 2. * * * If the plaintiff was justified in this refusal, then there obviously can be no allowance to the defendant for any excess cost that may have been sustained by the defendant in com-

pleting the work in Section 2, which excess cost was brought about by its own breach of the contract." Whether this is a correct statement of the law we need not now decide. Cost of completion of an indivisible contract is usually allowed as an offset, particularly where there has not been a complete performance by the builder, or he is in default. The effort is to avoid unjust enrichment to either party under such circumstances. Cf. *H. J. McGrath Co. v. Wisner,* 189 Md. 260, 268.

The appellant's main contention is that the contract was entire and indivisible, and therefore the reasonable cost of completing the work in Section II should have been deducted from the total contract price of $43,000.00. No direct testimony was offered by the plaintiff as to such cost, and the estimate offered by the defendant for performing the work in Section II was $27,346.55. It contends that the court did not apply the proper measure of damages, and erred in making no finding as to the cost of completing the work in Section II. Both these contentions rest on the assumption that the contract was indivisible. If the contract could be regarded as divisible, the cost of performing the work in Section II might properly be disregarded, no profit being allowed on it, and the court having allowed a deduction for completing the outfall in Section I.

It is the general rule that "where a total price for work is fixed by a contract, the work is not rendered divisible by the progress payments, particularly where the contract provided that the total price is not to be paid until the work is completed." *Westinghouse v. State Tax Comm.,* 206 Md. 392, 402, and cases cited. See also *Heinse v. Howard,* 153 Md. 380, and Note 22 A. L. R. 2d 1343. *Restatement, Contracts,* § 266(3), comment e, defines a divisible contract as one where performance of each party is divided into two or more parts, the number of parts due from each party is the same, and the performance of each part by one party is the agreed exchange for a corresponding part by the other party. Comment f, states that "It is a question of interpretation whether a contract is divisible." See *Durant v. Snyder,* 151 P. 2d 776 (Idaho); and *Schminke Milling Co. v. Dia-*

*mond Bros.,* 99 F. 2d 467 (C. C. A. 8th). Corbin takes the view that interpretation and intention should play only a limited part in the decision, which should depend upon the particular facts and the object to be attained. 3 *Corbin, Contracts,* § 694. Williston agrees that a contract may be entire in some aspects and divisible in others. 3 *Williston, Contracts* (Rev. Ed.), § 866. Cf. 5 *Williston, Contracts* (Rev. Ed.), § 1363. Corbin recognizes that although a provision for progress payment alone may not make a contract divisible, in a building contract the work and price may be apportioned into pairs. See *Bianchi Bros. v. Gendron,* 198 N. E. 767 (Mass.); *Carrig v. Gilbert-Varker Corporation,* 50 N. E. 2d 59 (Mass.); *New Era Homes Corporation v. Forster,* 86 N. E. 2d 757 (N. Y.); *Rentways, Inc. v. O'Neill Milk & Cream Co.,* 126 N. E. 2d 271 (N. Y.); *Blythe v. Embry,* 61 So. 2d 142 (Ala. App.). In this connection see also *Rodemer v. Hazlehurst & Co.,* 9 Gill 288, 295.

In the instant case we find no error in the allowance made. The contract itself made an apportionment for purposes of payment, and upon the facts stated the two parts of the work were separate and distinct. Moreover, it is significant that in its letter of January 10, 1955, enclosing part payment of the first requisition, the appellant, while differing as to the mode of calculation, based its estimate of completion on the completion of Section I, and not on completion of the whole contract. The letter stated: "we estimate your completion as of December 25, 1954 as 51.3% for a gross amount due $11,719.00 (sic) less retainer of $1,179.90, making an amount due this payment of $10,619.10 for Section 1." 51.3% of $23,000.00 is $11,799.00, and the payment is "for Section 1". In short, the defendant itself recognized that the payments on account would completely pay for the first section, without regard to the completion of Section II. A clearer acknowledgment of the severability of the contract in relation to payment can hardly be imagined.

*Judgment affirmed, with costs.*