**In the Matter of HOWDESHELL, INC., Debtor.**

**HOWDESHELL, INC., Plaintiff,**

**v.**

**KLINE CORPORATION and United States Fidelity and Guarantee Co., Defendants.**

**Bankruptcy No. 83–1620.
Adv. No. 84–83.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 20, 1985.

 

was later amended by the Debtor on February 23, 1984. In its Amended Complaint, the Debtor seeks to recover the reasonable value of labor and materials it furnished under a subcontract agreement with Kline prior to the termination of that agreement together with attorney fees. In due course, Kline filed its answer to the Amended Complaint, asserted certain affirmative defenses and also filed a Counterclaim in which it claims that it is entitled to recover a minimum of $54,138.58 because of the alleged breach of contract by the Debtor. Kline also seeks attorney's fees.

The underlying facts as developed at the final evidentiary hearing and as appear from the entire record, are as follows:

The Debtor is a Florida corporation engaged primarily as a subcontractor in large commercial construction projects involving the installation of plumbing, heating and air conditioning systems. The Defendant Kline is a general contractor extensively engaged in constructing major commercial projects. The Defendant USF & G is a bonding company whose prime business is furnishing payment and performance bonds on construction projects, primarily government projects.

On May 26, 1983, the Debtor and Kline entered into a subcontractor's agreement which involved the construction of a central vocational center for the School Board of Broward County. Kline was the general contractor on the project and under the subcontract, the Debtor was to perform all the duties necessary for the installation of heating, cooling and ventilation for the project as specified by the contract. This subcontract amount, as appears from the documentary evidence, was $1,012,500. The project actually involved five separate buildings, each a part of one single complex. Prior to commencing the work, the Debtor "staged" the job by moving several vans and materials to the job site, and ultimately, the manpower necessary to perform the work.

Although the contract does not so specify, it was Kline's understanding and inten-

See also, Bkrtcy., 55 B.R. 470.

Robert M. Quinn, Tampa, Fla., for plaintiff.

Sam C. Caliendo, Ft. Lauderdale, Fla., Jeffrey W. Warren, Tampa, Fla., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is an adversary proceeding commenced by Howdeshell, Inc. (Debtor) against Kline Corporation (Kline) and United States Fidelity and Guarantee Company (USF & G). The original Complaint was filed on February 22, 1984, but

tion that subcontractors would be paid twice a month for the value of the labor completed and materials stored on the job site as of the last day of each pay period. The subcontractors were required to present their pay requests to Kline on or before the tenth and twenty-fifth of each month in order for Kline to include the subcontractor's pay request in Kline's pay request for the pay period to the Broward County School Board (School Board) on the first and fifteenth of each month.

The progress payment procedure followed by Kline, again not specified in the subcontract agreement, was that Kline would review the subcontractor's pay request and determine what Kline believed was the value of the subcontractor's work completed and materials stored at the time of each pay request. A Kline representative would then meet with the School Board representative and reach an agreed value for the materials stored and work completed for each portion of the work. After those two parties agreed on a payment amount for each portion, Kline would submit its total pay request in the agreed amount to the School Board.

On June 25, 1983 the Debtor submitted its first payment request to Kline, seeking a payment of $69,037 minus a ten percent retainage for a net of $62,133.30 (Plaintiff's Exh. # 1). Kline rejected the first request for payment, claiming that it was submitted on the wrong form and directed Howdeshell to resubmit the payment request. In compliance, Howdeshell prepared a new request for payment which it identified as Pay Request # 1–A (Plaintiff's Exh. # 2). The second request contained a breakdown of the request on a per building basis. Klein rejected Pay Request # 1–A, challenging the amount claimed by Howdeshell for staging the job. According to Howdeshell, its total cost of mobilization was $21,950 and it only sought seventy-five percent of that amount, that is, $16,462. Kline refused to honor that request and agreed to pay only $2,000 of the start-up expense per payment request.

On July 25, 1983 Howdeshell submitted a draw request identified as Pay Request # 1–B, reflecting the reduction in the amount of staging. The total amount requested was $71,074 minus a ten percent retainage for a net request of $66,966.60. Kline included this amount in its Pay Request # 3 to the School Board (Defendant's Exh. # 7) submitted on August 1, 1983. On September 9, 1983 Kline paid Howdeshell $50,571 which represented the approved amount minus an additional ten percent retainage.

On August 10, 1983 the Debtor submitted Pay Request # 2 which covered the period of July 25, 1983 through August 10, 1983 (Plaintiff's Exh. # 4). This request was in the amount of $30,574.80. Kline approved only $2,000 of the request, claiming that the remainder of the request was for payments for materials which were shipped to the job site by Howdeshell from other job sites; certain types of material and items which were not usable on that particular project inasmuch as they did not meet the specification for the heating and air conditioning work. Kline included this amount in its Pay Request # 4 to the School Board (Defendant's Exh. # 9), submitted on August 15, 1983. Although the School Board paid Kline's Pay Request # 4 on August 20, 1983, at the time Howdeshell left the project on November 4, 1983 the $2,000 minus retainage approved for Pay Request # 2 had not been paid and has not since been paid.

Howdeshell submitted its Pay Request # 3 (Plaintiff's Exh. # 6) in the amount of $6,824 for the period ending August 25, 1983 to Kline on a timely basis. Kline approved the requested amount and submitted it as part of Kline's Pay Request # 5 (Defendant's Exh. # 15) to the School Board on September 1, 1983. The School Board paid Kline for this portion of the heating and air conditioning work on September 15, 1983. Kline paid Howdeshell the approved amount of its Pay Request # 3, less retainage, by check in the amount of $6,142 on October 12, 1983.

The next pay request submitted by Howdeshell covered the period from August 25, 1983 through September 10, 1983 and was in the amount of $7,062 (Plaintiff's Exh. # 7). This request was ultimately paid in the reduced amount of $4,950 on or about October 27, 1983. The next request for payment covered the period of September 10, 1983 through September 25, 1983 and was submitted in the amount of $29,783 (Plaintiff's Exh. # 8). It appears that this original request did not reach Kline or, in any event, they could not locate it. Howdeshell submitted a duplicate request in the same amount (Plaintiff's Exh. # 9). The replacement pay request was ultimately approved by Kline in the reduced amount of $10,685 and submitted to the School Board by Kline on November 1, 1983.

The next pay request submitted by Howdeshell covered the period from September 25, 1983 through October 10, 1983 and was in the amount of $7,459 and showed the prior request unpaid. Kline approved the amount sought in Plaintiff's Pay Request # 6 and included it in its Pay Request # 8 to the School Board (Defendant's Exh. # 26) submitted on October 15, 1983. The School Board paid Kline the amount requested on October 28, 1983. Again, Kline had not paid this amount to Howdeshell as of November 4, 1983 when Howdeshell left the job and has never paid the approved amount of Plaintiff's Pay Request # 5.

Plaintiff's Pay Request # 7 in the amount of $26,500 was submitted to Kline on a timely basis. The Pay Request was approved in the amount of $20,735 and Kline requested payment in this amount from the School Board in its Pay Request # 9 on November 1, 1983. Although Kline initially approved payment of Howdeshell's Pay Request # 5 in the amount of $10,685 and Pay Request # 7 in the amount of $20,785, Howdeshell was advised that those amounts had been cut again to $6,500 and $9,235, respectively, after Howdeshell left the job on November 4, 1983. Howdeshell has not received any payment on Pay Request # 5 or # 7.

The record reveals that on November 4, 1983, the attorney for Howdeshell sent by certified mail, return receipt requested, a letter to the president or vice president of Kline, informing them that Kline was in breach of the contract between Kline and Howdeshell because of its repeated failure to make progress payments to Howdeshell. Howdeshell declared Kline to be in breach of contract and unless payment was made in the amount of $36,723.40 on the past due progress payments and $11,717 in retainages on or before November 14, 1983, Howdeshell intended to terminate the contract and refused to perform more labor on the project.

In light of this development, Kline immediately contacted the second and the third lowest bidders and on December 20, 1983 entered into two subcontract agreements to complete the work Howdeshell had originally agreed to do. One subcontract was with H. Lim Industries, Inc. for $357,000 and the other was with Air Conditioning Associates, Inc. for $643,000. According to the vice president of Kline, the reason he split the remaining balance of the Debtor's contract with two contractors was to save some money on certain "mark up" items, the significance of which was not really very clearly explained.

Be that as it may, it is without question and it is conceded by the Debtor that the Debtor removed everything from the job site including its equipment and did not perform any work after November 4, 1983. It appears from the record that after the Debtor left the project, Kline received an invoice from Industrial Supply in the amount of $9,117.67 which represented a purchase by Howdeshell of certain materials for the project which, according to Industrial Supply, was not paid. Kline did, in fact, pay the two bills for Industrial Supply. Sparta, Inc. also submitted a bill for $797.91 which claimed to be a charge for labor performed. This amount, however, is disputed by the Debtor, stating that it was an improper back charge on the job for some corrective work which had to be done

in order to enable the School Board inspectors to have access to certain parts of the project.

It is without dispute that the original subcontract of the Debtor was ultimately completed and finished by H. Lam Industries and by Air Conditioning Associates at a cost of $988,000. The undisbursed amount left on the original contract with Howdeshell was $911,015. The cost of completion exceeded the Kline-Debtor subcontract price by $76,985.

Finally, the record reflects that the majority of the work for which the Debtor seeks compensation was performed after the Debtor filed its petition under Chapter 11 of the Bankruptcy Code and that the Debtor neither sought nor received court authority to assume its executory contract with Kline. Although the Debtor phrases its demand for compensation in terms of breach of contract, the relief sought is, quite properly, the quantum meruit value of the work performed and materials rather than the full extent of contract damages.

The Debtor contends that the payments by Kline, as outlined above, were insufficient, untimely and that they constituted a breach of the subcontract which entitled the Debtor to terminate the contract by serving notice on November 4, 1983. In support of its contention, the Debtor points to the paragraph on page 2 of the subcontractor agreement entitled "Monthly Estimate" which provides in pertinent part that:

> Payment shall be made by Kline to subcontractor as follows: As the work progresses monthly, an amount equalling the value of the work completed during the preceding calendar month shall be paid by Kline to the subcontractor after such of equivalent payment has been received by Kline from owner, meaning that no payment shall be due to the subcontractor from Kline until and unless Kline has been paid by the owner for the labor and material furnished by the subcontractor and provided the unpaid balance of the contract amount shall at all

times be sufficient in the judgment of Kline to complete the work and to pay any unpaid liens or claims for which subcontractor is responsible hereunder.....

(Debtor's Exh. # 1). The Debtor contends that the clear meaning of this language requires payment to subcontractors by Kline when payment was received by Kline from the School Board. Further, the Debtor notes that under Florida law, provisions in construction contracts which condition payments to subcontractors upon the general contractor's receipt of payment from the owner must be construed in favor of the subcontractor, citing *Peacock Construction Co., Inc. v. Modern Air Conditioning, Inc.*, 353 So.2d 840, 842 (Fla.1977). Further, the Debtor contends that the condition precedent to the Debtor's being paid, i.e. School Board payment to Kline, cannot be enforced because Kline's failure to timely request payment from the School Board prevented the satisfaction of the condition. See *Duvall County v. Charleston Engineering & Contracting Co.*, 101 Fla. 341, 134 So. 509, 515 (1931); *Clement v. Pensacola Builders Supply Co.*, 138 Fla. 629, 189 So. 852, 853 (1939).

Kline's repeated failure to make progress payments, claims the Debtor, constituted a material breach of the subcontract by Kline which entitled the Plaintiff to terminate its performance under this subcontract on November 4, 1983. *Guerini Stone Co. v. P.J. Carlin Construction Co.*, 248 U.S. 334, 345, 39 S.Ct. 102, 106, 63 L.Ed. 275 (1919); *Jacquin-Florida Distilling Company v. Reynolds, Smith and Hills, Architects-Engineers-Planners, Inc.*, 319 So.2d 604, 608 (Fla. 1st DCA 1975); *Shapiro v. Engineering Corp.*, 215 Md. 373, 137 A.2d 695, 698 (1958).

Assuming the right to recovery, the Debtor's contends that the reasonable value of the work completed and materials stored on the job should be found to be $143,596 as originally requested by Howdeshell rather than the amount approved for payment by Kline, $118,732.22. It notes that there was no evidence presented which explains or justifies the reduction to $101,-

485, the amount ultimately approved by the School Board.

Kline acknowledges that the Debtor was not paid in full for the work performed and the materials stored at the project at the time the contract was terminated. It urges that the value for the work and the materials should be established at $101,485 as set by the School Board's supervisor. Kline claims, and there was no real dispute, that it was entitled to set-off the amounts paid by Kline on the Industrial Supply claim ($9,177.67) and the Sparta Insulation claim ($797.91) from the amounts owed to the Debtor.

Kline further contends that it is entitled to damages for breach of contract in the amount of $76,985 and that that amount should be set-off against the amount due the Debtor for work performed. *Cheezem Development Corp. v. Intracoastal Sales and Service, Inc.*, 336 So.2d 1210 (Fla.2d DCA 1976). Kline argues that the subcontract establishes that payment by the owner is a pre-condition to payment from Kline to Howdeshell. It points to the subcontract requirement for monthly draws and argues that the very short duration of the performance under the contract precluded the finding of unreasonable delays in payment to Howdeshell and assuming, without admitting, that there were delays, that they were insignificant when compared to the total time and value of the subcontract and could not serve as a basis to terminate the contract. *Rubinstein v. Mester*, 362 So.2d 986 (Fla.3d DCA 1978). In addition, Kline argues, that the subcontract provides in Article X that "no dispute shall interfere with the progress of construction and subcontractors shall proceed with work as directed." It claims that the subcontract established a remedy by having the matter presented to the owner for resolution or to arbitration. The issue of attorney's fees was reserved for later hearing.

Based on the foregoing, the Court is satisfied that although the Debtor did not assume the contract after filing its petition, it is entitled to payment for the reasonable value of the work performed and materials provided to Kline. The Court finds the reasonable value of the work performed to be $101,485 which Howdeshell has been paid $68,663, leaving a balance due to the Plaintiff of $32,822.

The Court finds, further, that if the contract had been in effect the consistent, unjustified delay in payments, whether occasioned by mere delay in payment to the Debtor or by Kline's own delay in submitting its pay request to the School Board, would have constituted a material breach of contract justifying Howdeshell's termination of the contract. Therefore, Kline is not entitled to offset its cost of completion. It is entitled to offset the payment made to Howdeshell's sub-subcontract, Industrial Supply, in the amount of $9,117.67 and the payment to Sparta, Inc. in the amount of $797.91, resulting in a net amount due the Plaintiff of $22,846.92.

A separate final judgment will be entered in accordance with the foregoing.