**Mark KOCH, d/b/a Commercial Painting Company, Inc., Plaintiff–Appellant,**

v.

**CONSTRUCTION TECHNOLOGY, INC., and Fidelity and Deposit Company of Maryland, Defendants–Appellees.**

Supreme Court of Tennessee,
at Jackson.

May 20, 1996.

Michael I. Less, Scott A. Frick, Less, Getz & Lipman, Memphis, for Plaintiff–Appellant.

Gerald B. Kirksey, Brentwood, Patricia C. Kussman, New Orleans, LA, American Subcontractors Assn. of Middle Tennessee, American Subcontractors Assn. of Western Tennessee, Amicus Curiae.

David A. Velander, Craig M. Beard, Novick, Velander & Anderson, Memphis, for Defendants–Appellees.

## OPINION

DROWOTA, Justice.

This case involves a contract dispute between Mark Koch (d/b/a Commercial Painting Company, Inc.) and Construction Technology, Inc., (CTI), the former a painting subcontractor and the latter the general contractor on a construction project owned by the Memphis Housing Authority (MHA). The issues for our determination are as follows: (1) whether the Court of Appeals erred in construing the "pay when paid" clause in the subcontract as a condition precedent, thereby making Koch's right to payment dependent upon CTI's receipt of payment from MHA; and (2) whether the Court of Appeals erred in construing the bond given by CTI to Koch as a statutory bond rather than a common law bond, which had the effect of precluding Koch's right of action against Fidelity and Deposit Company of Maryland (FDCM), the surety on the bond. For the following reasons, we hold that the Court of Appeals erred on both issues; therefore, we reverse the judgment of that court and remand the cause for further proceedings.

### FACTS AND PROCEDURAL HISTORY

On March 17, 1988, CTI and the MHA entered into a contract in which CTI agreed to make improvements to the Dixie Homes Housing Development in Memphis. On March 30, 1988, CTI subcontracted the painting portion of the project to Koch; CTI also provided a performance and payment bond to him through FDCM. The subcontract included a "payment" clause, which provides in pertinent part, that:

> Partial payments subject to all applicable provisions of the Contract shall be made when and as payments are received by the Contractor. The Subcontractor may be required as a condition precedent to any payment to furnish evidence satisfactory to the Contractor that all payrolls, material bills, and other indebtedness applicable to the work have been paid.

Koch completed all work required by the contract on July 31, 1989; and he was paid $148,110.96 for this work by CTI. However, because the amount of actual work performed exceeded this total, and because CTI refused to make any additional payments, Koch brought an action against it for breach of contract in the Shelby County Circuit Court. In its answer, CTI cited the payment clause as an affirmative defense, alleging that "CTI has not been paid in full by MHA and, therefore, is not obligated to pay plaintiff since payment to CTI by MHA is a condition precedent to CTI's obligation to pay plaintiff."

Koch's complaint also included a claim against FDCM based on the performance and payment bond. In its answer, FDCM alleged that Koch's claim was barred by the six month limitations period applicable to statutory bonds, and that Koch had failed to comply with the notice provisions applicable to such bonds.

After a bench trial, the trial court found, in pertinent part, as follows:

> This contract [between Koch and CTI] provided that the work performed by Plaintiff would be paid when defendant CTI received payment from MHA.

> .        .        .        .        .

> Based on the sign-off sheets numbers and the actual observations and measurements of the project made by the plaintiff and/or his employees as it relates to the painting work, the Court finds that MHA has paid CTI $28,307.22 for work actually performed by plaintiff in addition to the $148,-110.96 already paid to plaintiff by CTI. This amount ... does not include any amounts for other work actually performed by plaintiff for which CTI has not been paid by MHA.

> .        .        .        .        .

> The plaintiff, Mark Koch d/b/a Commercial Painting Company, is awarded a judgment against the defendant CTI in the amount of $28,307.22.

Pursuant to motion made at the close of plaintiff's proof, the defendant FDCM is

dismissed from this action with full prejudice.

. . . . .

This judgment may be amended by proper application upon final adjudication by a court of competent jurisdiction concerning the total quantities to be paid for by MHA to defendant CTI for painting work performed by plaintiff on the Dixie Homes project.

The last paragraph of the order was presumably included because CTI and MHA were then involved in litigation in another division of the Shelby County Circuit Court concerning MHA's liability to CTI for its work on the Dixie Homes project. *Brown v. Bay Architectural Service, Inc.*, (Shelby Circuit Court, No. 30132). After the *Brown* litigation had concluded, Koch filed a motion requesting that the trial court increase the judgment to $39,650.14, arguing that the uncontroverted evidence presented at trial in the instant case showed this to be the total amount due him under the subcontract. CTI responded by filing a motion to reduce the judgment, in which it asserted that based upon the trial court's findings in *Brown,* Koch was due only $21,789.93 on the subcontract. The trial court denied both motions, and Koch appealed to the Court of Appeals.

The Court of Appeals affirmed the judgment. As to Koch's claim against CTI, the Court relied heavily upon *Hussey v. Crass,* 53 S.W. 986 (Tenn.Chan.App.1899), in determining that the "pay when paid" clause was a condition precedent to CTI's promise to pay. With respect to Koch's claim against FDCM, the court concluded that the bond executed by CTI to Koch was a statutory bond, and that Koch had neither brought its claim on the bond in a timely fashion, nor adhered to the notice provisions applicable to such bonds. We granted Koch's application for permission to appeal to address these issues.

## I.

### A. *Construction of the Payment Clause*

■ The first issue for our determination is whether the payment clause in the subcontract establishes MHA's payment to CTI as a condition precedent to CTI's obligation to pay Koch. Koch argues that the lower courts erred in so construing the clause. Although conceding that the *Hussey* court construed similar language as a conditional promise, he argues that an overwhelming majority of jurisdictions reject that position, and instead hold that such language establishes an absolute promise to pay on the part of the general contractor, but simply affords it a reasonable amount of time to make the payments. This majority position is sound public policy, Koch contends, because it is inequitable to make the subcontractor's right to payment dependent upon the owner's performance, which might not be forthcoming for any number of reasons out of the subcontractor's control. Because *Hussey* is at odds with the compelling majority position, Koch concludes, it should be overruled and the majority rule adopted in its place.

CTI responds that the law of other jurisdictions is of no consequence, and that *Hussey*—the only reported Tennessee decision addressing the issue—controls this case. Therefore, it concludes, the lower courts' construction of the payment clause should be affirmed.

Because the parties and the lower courts relied so heavily upon *Hussey,* we must first examine it in some detail. In that case, the general contractor, Crass, agreed with the owner to build a section of railroad; and Crass subcontracted the trestle work to Hussey. The subcontract provided that Hussey was to take out "estimates" on or about the 1st of each month, and that *"90 per cent of said estimate was to be paid about the 15th of the following month, or as soon thereafter as the railroad company should pay or cause to be paid J.T. Crass therefor ..."* *Hussey,* 53 S.W. at 986 (emphasis added). While the work was in progress, the railroad company became insolvent. Because of that development, Crass was only able to obtain 10% of the money due under his contract, despite extensive negotiating with the railroad company during its impending failure; and he paid his subcontractors on that pro rata basis.

Hussey then brought an action against Crass for breach of contract. The general contractor defended by asserting that the

"pay when paid" clause was a condition precedent and that, furthermore, Hussey had agreed during the negotiations with the railroad that his claim was dependent upon Crass's obtaining a settlement with that entity. The chancellor ruled in Crass's favor, and Hussey appealed.

On appeal, the Chancery Court of Appeals affirmed the ruling. After setting forth the factual background, the court stated:

> We think there can be no doubt that the understanding between the parties was that the money that Mr. Crass expected to pay to his subcontractors was to be realized from the railroad company, and that he would not be liable to the subcontractors, and complainant among the number, unless he could make collection from the railroad company. We think this is the true construction of the contract itself on its face, so far as concerns complainant's claim.

*Hussey*, 53 S.W. at 988.

After making that statement, the Court proceeded to quote extensively from correspondence between the parties during Crass's negotiations with the railroad: this lengthy recitation was undertaken for the purpose of illustrating Hussey's willingness to accept whatever settlement Crass could negotiate with the financially declining railroad. The Court concluded by stating:

> From this correspondence, taken in connection with the statement in the contract that the complainant was to be paid when Crass was paid by the railroad company, we have no doubt that the expectation of both parties was that the liability of Mr. Crass depended upon his receiving money from the railroad company. The correspondence above mentioned is unintelligible otherwise.

*Id.* at 988–89.

We believe that the parties attach too much importance to *Hussey* for purposes of this case. While the Court did state in a single sentence that the language in the contract was a condition precedent to the subcontractor's right to payment, that conclusory statement was supported by no analysis. Indeed, the court spent almost no time on the contractual language, but was primarily concerned with the overwhelming evidence that tended to show that Hussy had agreed, *after* the railroad company began to show signs of financial collapse, to accept whatever payment Crass could obtain from it. Because of the Court's almost complete reliance on parol evidence, and because of the manifest lack of such evidence here, we cannot agree that *Hussey* requires that the contractual language at issue here be construed as a condition precedent.

■ Having concluded that *Hussey* is not determinative, we must now decide the proper construction of that language. Although we have never specifically addressed the issue, there are a number of settled propositions of law to guide us. First, it is well-established that condition precedents are not favored in contract law, and will not be upheld unless there is clear language to support them. *Harlan v. Hardaway*, 796 S.W.2d 953, 958 (Tenn.App.1990). Furthermore, this general rule applies with particular force in the context of "pay when paid" clauses, for the plaintiff is correct that an overwhelming majority of jurisdictions do not construe such clauses so as to release the general contractor from all obligation to make payment to the subcontractor in case of nonperformance by the owner. Rather, these clauses are most often construed as simply affecting the timing of payments that the general contractor is required to make to the subcontractor, regardless of whether the owner performs or not. These courts refuse to shift the risk of the owner's nonperformance from the general contractor to the subcontractor unless the language clearly indicates that the parties intended to do so.[1]

---

1. See *Byler v. Great American Ins. Co.*, 395 F.2d 273 (10th Cir.1968); *Dancy v. William J. Howard, Inc.*, 297 F.2d 686 (7th Cir.1961); *Trinity Universal Ins. Co. v. Smithwick*, 222 F.2d 16 (8th Cir.1955); *F.W. Sims, Inc., v. Federal Ins. Co.*, 788 F.Supp. 149 (E.D.N.Y.1992); *Architectural Systems, Inc. v. Gilbane Bldg. Co.*, 760 F.Supp. 79 (D.Md.1991); *Statesville Roofing & Heating Co. v. Duncan*, 702 F.Supp. 118 (W.D.N.C.1988); *Aesco Steel v. J.A. Jones Constr. Co.*, 621 F.Supp. 1576 (D.La.1985); *Havens Steel Co. v. Randolph Engineering Co.*, 613 F.Supp. 514 (W.D.Mo. 1985); *Seal Tite Corp. v. Ehret, Inc.*, 589 F.Supp. 701 (D.N.J.1984); *Moore v. Continental Cas. Co.*,

A good example of this reasoning is contained in the seminal case of *Thos. J. Dyer Co. v. Bishop International Engineering Co.*, 303 F.2d 655 (6th Cir.1962), wherein the Court was called upon to construe a clause which provided that "no part of [the subcontract price] shall be due until five days after Owner shall have paid Contractor therefor ..." *Dyer*, 303 F.2d at 656. In holding that the clause was not a condition precedent, the *Dyer* court explained:

> It is, of course, basic in the construction business for the general contractor on a construction project of any magnitude to expect to be paid in full by the owner for the labor and material he puts into the project. He would not remain in business for long unless such was his intention and such intention was accomplished. That is a fundamental concept of doing business with another. The solvency of the owner is a credit risk necessarily incurred by the general contractor, but various legal and contractual provisions, such as mechanic's liens and installment payments, are used to reduce this to a minimum. These evidence the intention of the parties that the contractor be paid even though the owner may ultimately become insolvent. This expectation and intention of being paid is even more pronounced in the case of a subcontractor whose contract is with the general contractor, not with the owner. In

addition to his mechanic's lien, he is primarily interested in the solvency of the general contractor with whom he has contracted. He looks to him for payment. Normally and legally, the insolvency of the owner will not defeat the claim of the subcontractor against the general contractor. Accordingly, in order to transfer this normal credit risk incurred by the general contractor from the general contractor to the subcontractor, the contract between the general contractor and the subcontractor should contain an express condition clearly showing that to be the intention of the parties.

> In the case before us we see no reason why the usual credit risk of the owner's insolvency assumed by the general contractor should be transferred from the general contractor to the subcontractor. It seems clear to us under the facts of this case that it was the intention of the parties that the subcontractor would be paid by the general contractor for the labor and materials put into the project. We believe that to be the normal relationship between the parties. If such was not the intention of the parties it could have been expressed in unequivocal terms dealing with the possible insolvency of the owner ...

*Dyer*, 303 F.2d at 660–61 (citations omitted).[2]

With these rules in mind, we conclude that the language here does not evidence the par-

366 F.Supp. 954 (W.D.Okla.1973); *Howdeshell, Inc. v. Kline Corp.*, 56 B.R. 122 (M.D.Fla.1985); *Pioneer Roofing Co. v. Mardian Constr. Co.*, 152 Ariz. 455, 733 P.2d 652 (1986); *Yamanish v. Bleily and Collishaw, Inc.*, 29 Cal.App.3d 457, 105 Cal.Rptr. 580 (1972); *DEC Electric, Inc. v. Raphael Constr. Corp.*, 558 So.2d 427 (Fla.1990); *Grady v. S.E. Gustafson Constr. Co.*, 251 Iowa 1242, 103 N.W.2d 737 (1960); *New Amsterdam Cas. Co. v. Allen Co.*, 446 S.W.2d 278 (Ky.App. 1969); *Atlantic States Constr. Co. v. Drummond & Co.*, 251 Md. 77, 246 A.2d 251 (1968); *Bayer & Mingolla Indus. v. A.J. Orlando Contracting Co.*, 6 Mass.App.Ct. 1, 370 N.E.2d 1381 (1978); *Mrozik Constr., Inc. v. Lovering Assoc.*, 461 N.W.2d 49 (Minn.App.1990); *American Drilling Service Co. v. City of Springfield*, 614 S.W.2d 266 (Mo.App. 1981); *D.K. Meyer Corp. v. Bevco, Inc.*, 206 Neb. 318, 292 N.W.2d 773 (1980); *Action Interiors, Inc. v. Component Assembly Systems, Inc.*, 144 A.D.2d 606, 535 N.Y.S.2d 55 (1988); *Howard–Green Electric Co. v. Chaney & James Constr. Co.*, 12 N.C.App. 63, 182 S.E.2d 601 (1971); *Power & Pollution Serv. v. Suburban Power Piping Corp.*,

74 Ohio App.3d 89, 598 N.E.2d 69 (1991); *Mignot v. Parkhill*, 237 Or. 450, 391 P.2d 755 (1964); *United Plate Glass Co. v. Metal Trims Indus.*, 106 Pa.Cmwlth. 22, 525 A.2d 468 (1987); *Elk & Jacobs Drywall v. Town Contractors, Inc.*, 267 S.C. 412, 229 S.E.2d 260 (1976); *Sheldon L. Pollack Corp. v. Falcon Indus.*, 794 S.W.2d 380 (Tex.App.1990); *Amelco Electric v. Donald M. Drake Co.*, 20 Wash.App. 899, 583 P.2d 648 (1978); *Riley Constr. Co. v. Schillmoeller & Krofl Co.*, 70 Wis.2d 900, 236 N.W.2d 195 (1975).

**2.** While the insolvency of the owner is probably the most common risk to which the subcontractor would be exposed if we were to construe these clauses as conditions precedent, it is not the only one. Several authorities have noted that a vindictive general contractor could delay, or avoid, making payment to the subcontractor simply by refusing to make a final settlement with the owner. A federal district court in Indiana explained this situation as follows:

> The facts of the case at bar inspire a hypothetical fact situation which underscores the wis-

ties' intention to shift the risk of the owner's nonperformance from the general contractor to the subcontractor with sufficient clarity to qualify as a condition precedent. The first sentence—"payments ... shall be made when and as they are received by the contractor"—could be interpreted as a timing provision; it is not necessarily indicative of the parties' intent to make CTI's obligation to pay Koch dependent upon CTI's first being paid by MHA. This is particularly so in light of the following sentence in the clause, which provides: "[t]he subcontractor may be required as a condition precedent to any payment to furnish evidence satisfactory to the contractor that all payrolls, material bills, and other indebtedness applicable to the work have been paid." This sentence illustrates that the parties certainly knew how to create a condition precedent if they so desired. That they did not use such unambiguous language in the first sentence prevents us from construing that sentence as a condition precedent to Koch's right to payment.

### B. Amount of the Judgment

Having determined that the payment clause is not a condition precedent to Koch's right to payment, we must determine the proper amount due him under the contract. Koch argues that the evidence presented by him at trial establishes that he performed $39,650.14 worth of actual work on the project. Since CTI did not dispute that evidence at trial, but simply relied upon the payment clause and offered proof as to how much of the painting work had been paid for by MHA, Koch concludes that his evidence as to the actual amount of work performed must be regarded as conclusive.

CTI responds by first citing the provision in the trial court's order that states:

This judgment may be amended by proper application upon final adjudication by a court of competent jurisdiction concerning the total quantities to be paid for by [MHA] to defendant [CTI] for painting work performed by plaintiff on the Dixie Homes project.

CTI argues that this provision was included because of the then-pending litigation in *Brown*—a case in which the issue of CTI's liability to each of its subcontractors was litigated. CTI then contends that the findings of the *Brown* court establish that Koch is due only $21,789.93. Thus, it concludes, Koch may only recover that amount.

We cannot accept the argument advanced by CTI. First of all, it is not clear whether the $21,789.23 figure represents the actual amount of work done by Koch under the contract, or whether that figure represents the amount owed to CTI by MHA for the painting work. If it is the latter, then the figure avails CTI nothing, for we have already concluded that Koch's right to payment is not dependent upon the amount that CTI is due from MHA. More important, however, is the fact that although CTI's liability to its subcontractors, including Koch, may have been litigated in *Brown*, Koch was not a party to that litigation. Therefore, he is not bound by the findings of that court. Because evidence that is uncontroverted at trial must be taken as true, *Cleveland Wrecking Co. v. Butler,* 57 Tenn.App. 570, 421 S.W.2d 380 (1967); *McReynolds v. Cherokee Ins. Co.,* 815 S.W.2d 208 (Tenn.App.1991), and because there is uncontroverted evidence in the record that the total work done by Koch amounted to $39,650.14, the judgment is hereby increased to that amount.

### II.

The next issue for our determination is whether the Court of Appeals erred in

---

dom of the *Dyer* rule. Under the terms of a general contract such as that between Schools and Hall, in which the owner retainage for the second half of the work is five percent, and subcontracts such as we find here, in which the general contractor retains ten percent from the subcontractors throughout the job, it is a virtual certainty that the prime contractor will find himself owing the subcontractors more than is owed to him by the owner. Under the rule for which Hall argues, it would not

be inconceivable that a malefic general contractor might intentionally maintain a dispute with the owner which would cause the owner to refuse to make payment; the general contractor could thereby avail himself for several years of funds to which he has no right. The *Dyer* rule precludes such an intolerable state of affairs.
  *Midland Engineering Co. v. John A. Hall Constr. Co.,* 398 F.Supp. 981, 994 (N.D.Ind.1975).

holding that the bond issued by FDCM was a statutory rather than common-law bond, which resulted in the dismissal of Koch's claim against FDCM.

■ Every general contractor who undertakes a public work in Tennessee must furnish a bond that complies with certain minimum statutory criteria. The basic statute addressing these bonds, Tenn.Code Ann. § 12–4–201, provides in pertinent part that:

No contract shall be let for any public work in this state, by any city, county or state authority, until the contractor shall have first executed a good and solvent bond to the effect that the contractor will pay for all labor and materials used by the contractor, or any immediate or remote subcontractor under the contractor, in such contract, in lawful money of the United States.

Although a subcontractor or other furnisher of labor or materials may sue under this bond, Tenn.Code Ann. § 12–4–204, such a person must notify interested parties of its claim before initiating the suit. Tenn.Code Ann. § 12–4–205. Moreover, the party must bring the action within six months following the completion of the public work, or of the furnishing of the labor or materials. Tenn. Code Ann. § 12–4–206.

These statutes, however, merely set forth the minimum requirements; the principal and surety on the bond work are free to provide suppliers of labor and materials with more rights and privileges than those called for by the statutes if they so desire. If the principal and surety extend rights above and beyond those contained in the statutes, the bond is characterized as a common-law bond and is enforceable as written. *National Surety Corp., v. Fischer Steel Corp.,* 213 Tenn. 396, 374 S.W.2d 372 (1964); *Wal-Board Supply Co., v. Daniels,* 629 S.W.2d 686 (Tenn.App.1981).

The bond issued by FDCM provides, in pertinent part, as follows:

We, [CTI], are held and firmly bound unto [MHA] ... for use of [MHA], and all persons doing work or furnishing skill, tools, machinery, supplies or materials un-

der or for the purpose of the contract described below ...

. . . . .

Now, therefore, the conditions of this obligation are such that if the Principal ... shall promptly pay all just claims for damages or injury to property and for all work done, or skill, tools, or machinery, supplies, labor and materials furnished and debts incurred by the contractor in or about the performance of the work contracted for, this obligation is to be void.

. . . . .

The undersigned principal and surety do further hereby consent and yield to the jurisdiction of the state civil courts of Shelby County, Tennessee, and shall assure and protect all laborers and furnishers of material on said work both *as required by applicable law.*

The Court of Appeals reasoned that because the principal and surety merely agreed to protect suppliers of labor and materials on the project "as required by applicable law," the bond was statutory. Since Koch failed to give the notice required by § 12–4–205, and since he brought the action on the bond more than six months after the completion of the project in violation of § 12–4–206, the Court dismissed the claim against FDCM.

We cannot agree with the Court of Appeals' conclusion that the bond is statutory. While § 12–4–201 merely requires the general contractor to pay for all the labor and materials used by the general contractor or an immediate or remote subcontractor, the bond in the instant case goes further. In the second paragraph quoted above, the principal and surety agree not only to pay for labor and materials, but also to pay "all just claims for damages and injuries to property." This is clearly an obligation above and beyond that contemplated by the statutes. Moreover, the bond makes no explicit reference to the Tenn.Code Ann. § 12–4–201—12–4–206, a fact that this Court found significant in *Fischer, supra;* and it neither expressly sets forth any notice requirements nor limits the time for bringing an action on the bond. Therefore, we conclude that the bond is of the common-law variety.

Because we conclude that the Court of Appeals erred in characterizing the bond as statutory, its dismissal of FDCM from this action on that ground is hereby reversed.

For the aforementioned reasons, the judgment of the Court of appeals is reversed and the case remanded for further proceedings consistent with this opinion.

ANDERSON, C.J., and REID, BIRCH and WHITE, JJ., concur.